

**John A. Sorensen, DMD, PhD**
Diplomate, American Board of Prosthodontists

drjohn@pacdent.com
**503-639-5599**
12750 SW 68th Ave. Portland, OR 97223

March 18, 2009

Mr. Jackie Pinch

Dear Ms. Pinch:

I am so glad that we will be able to start all of the treatment over again so that we can achieve an optimal result for you. I want to change the contours and proportioning of the front teeth to improve the esthetic result. Because the design of the back teeth is dependent on the shape, length and bite of the front teeth I will have total control of all factors for your full mouth rehabilitation. We will also open your bite slightly more than where you currently are with the bonding material building up the biting surfaces of the back teeth.

A general description of your treatment is as follows:
1. First appointment for esthetic analysis, analysis of your bite, impressions for study models and jaw relations.
2. My technician will place your study models on an articulator and we will buildup the teeth in wax to design the esthetics, bite and function. The wax-up serves as the three-dimensional blue print for the design of your teeth. We then duplicate the wax-ups in stone and make matrices used for design of the tooth preparations in the clinic and fabrication of your temporary restorations in the laboratory.
3. On the first full day we will work on the lower jaw and cut off the existing ceramic restorations, modify the front tooth preparations and prepare the back teeth. I make two impressions at around 12:00 and then my technician will fabricate the arch of temporary restorations out of acrylic in the laboratory. Later in the afternoon we will adjust and cement the lower arch restorations.
4. Within a week we will have the second first full day to work on the upper jaw and cut off the existing ceramic restorations, modify the front tooth preparations and prepare the back teeth. The same procedures are followed to make the upper arch temporary restorations.
5. In the next 4 weeks we would see you for some short appointments to check the bite and get your feedback on the design of the teeth. I have found that the temporaries are the best means of communicating with you what you like and what you want to change in the design of the restorations. This is the time to speak up because additions and subtractions are easily

*Document 3-A*

*96*

made in the acrylic material. Hopefully, we can get the design of the temporaries so that you will say – this is what I want my teeth to look like.

6. We will then have a half-day appointment to make final impressions of the lower arch. The lower jaw is numbed up, the temporaries removed, two final impressions made, jaw relations made and the temporary restorations recemented.

7. Approximately 3 weeks later we will spend the day adjusting, delivering and cementing the lower arch of ceramic restorations.

8. In about a week we repeat the half-day of final impressions for the upper jaw.

9. 3 weeks later we will spend the day adjusting, delivering and cementing the upper arch of ceramic restorations.

10. One to two weeks later we will see you for a follow-up visit to check the bite and make a night guard. About a week later we will deliver the night guard.

Of course there are a lot more details and procedures that are done during the above appointments but this will give you a pretty good idea of what is involved at the appointments. This type of work is one of the most satisfying things I do. For me this will be lots of fun to make the transformation for you.

Please do not hesitate to ask any questions that you may have about your treatment.

Sincerely,

John

John A. Sorensen, DMD, PhD, FACP
Diplomate, American Board of Prosthodontists

Document 3-A

91



**Pacific
Dental
Institute**

May 28, 2009

Ms. Jackie Pinch
40 Crestfield Court
Lake Oswego, OR 97035

Dear Jackie:

I am a little surprised at our conversation on May 25th regarding your decision to cancel your appointment on Wednesday, May 27th. Although I can appreciate your concerns about my decision to release one of my technicians, the ultimate decision and responsibility for the outcome of your restorations is solely mine. Please keep in mind I have been completing cases like yours for nearly 25 years. The recently released technician only worked for me for one year. I have extremely high standards. I'm the one who directs reshaping and coloring of tooth restorations; it is my work and input that makes the outcome awesome.

Permit me to recap our relationship thus far:

1) You came to us because you lost confidence in ███████ ability to complete your restoration. You believed he didn't understand the concept of using dentin bonding agents. You reported that you did not get to approve ███████ porcelain restorations before he cemented them. Further, you said the restorations were too gray. According to our notes, you stated you only completed $14,000 of the approximate $30,000 treatment plan he outlined for you. We met for our first consultation on February 20, 2009.

2) Prior to conducting the preparation for the upper (maxillary), you indicated you wanted to have some input for the upper design of your teeth. You spent 1.5 hours with ███████ complied with your requests for changes to the diagnostic waxup, he stated that although he made your teeth broader at the gumline and filled in the spaces between the teeth. He told you that there may be restrictions due to the actual size and height of the teeth in your mouth and how it would actually fit. He explained to you that Dr. Sorensen would have to determine that design on the day of preparation.

3) On May 18, 2009, we prepared your lower (mandibular) teeth. You were the only patient and you were in the chair from 9:00 a.m. to 7:30 p.m. (with a 2 hour recess).

4) On May 21, 2009, you were in the chair from 9:00 a.m. to 10:00 p.m. with a two hour break. You kept insisting that you wanted the teeth exactly like the waxed up model you designed. When I placed the new temporaries you said that the front teeth were too pointy. You insisted that the neck of the teeth be a specific width to make the teeth look more square at the gumline. However, again I must reiterate that it has to

12750 S.W. 68th Avenue  .  Portland, OR 97223
Phone: 503-639-5136  ·  Fax: 503-620-0187

*Document 3-B*

**98**

JACKIE PINCH
May 28, 2009
PAGE TWO

4. (continued)
be within the confines of where your teeth are naturally against the gums and cannot exceed that space without compromising your gum health. You claim your previous teeth were more comfortable even though they overlayed your tissues and were slightly inflamed below the gumline. You also called in while we were making the upper temporaries and said you wanted them a whiter and brighter bleaching shade. We made them OM1 opaque white bleaching shade. I placed a second layer of an enamel shade at the edges of the teeth which normally creates beautiful esthetics. However, with the extremely white opaque bleaching color the second layer enamel shade looked yellow. I told you that I was unhappy with the appearance of the upper front temporaries and that at the next appointment we would fix that. Frankly, by 9:30 to 10:00 p.m., I was too tired to do anything more that night.

My concerns are:

1) That although both ▮▮▮▮ my technician, and I have stated repeatedly that we are happy to comply with your specific requests for your restorations, your final teeth need to be completed within the biologic confines of the actual space occupied by your teeth and tissues. There are gum health reasons your teeth cannot be built over your gums; doing so encourages bacteria and ultimately cause serious periodontal disease, damage to your gums, bone and teeth. Further, the thickness of the new teeth have to be able to fit against your lips properly but be thick enough to make the radical color change you are after.

2) You seem determined to design your teeth exactly as you want them. Yet, I'm expected to make them work even though what you may be asking for isn't possible. Complying with all of the requests and directions you have outlined thus far could potentially lead to dental mal-practice and as the patient, you would suffer the negative consequences.

3) During our appointments, you continually voiced concern that I was grinding off too much tooth structure. Fortunately for both of us, I filmed the entire process and it will demonstrate that I only removed what was placed there by another doctor and a small amount around the gingival area to enable me to achieve the huge color change to the whitening shade color of Bleach 020. Laying the color you have requested would be dark around those edges and you would be dissatisfied with the final outcome. For me, conserving tooth structure whenever possible is the rule I live by

I take pride in the results I achieve for my patients. It is my regret that you have not given me the additional appointments and the time required to complete a good job for you. Working with the temporaries, especially for a patient like you where we are redoing 12 units and making a huge color and a form change is an iterative process taking up to 3 additional appointments to perfect your temporaries. I am willing to let you dictate the design as long

*Document 3-B*

**99**

JACKIE PINCH
May 28, 2009
PAGE THREE

as it is compatible with your actual bite, tissue and tooth structure and will guarantee good long term dental health.. As much as I want to please you, I am unwilling to compromise my work professionally or ethically. I hope you understand my position and let me complete the process the way I have done it the last 25 years.

Sincerest regards,


John A. Sorensen, DMD, PhD
Diplomate, American Board of Prosthodontics

Document 3-B

100

 Pacific Dental Institute

August 31, 2009

Ms. Jackie Pinch
40 Crestfield Court
Lake Oswego, OR 97035

Dear Ms. Pinch

I am in receipt of your request to discontinue services. Honestly, this is a confusing turn of events since I thought your issues were resolved on June 2, 2009 and we were moving forward to complete your restorations. There were still several appointments scheduled to modify the temporaries per your request.

On June 22, 2009, Vangie informed me that you wanted to sit with ████ to make changes to the waxups. Based on the last experience in May when you directed ████ I determined it would be best I do the work on waxups. When you sat with him last time, you directed him to make the necks of the teeth wider. He was unable to keep the design within resonable biologic countours and I spent a lot of practice chairtime to reshape them so they would fit. As the prosthodontist, it is my responsibility to make those design decisions and communicate changes to my technician.

Based on the clinical notes and all of the email communications (which are attached), the teeth design you wanted kept changinng. You would ask me to lengthen them and we did, then you would ask to have them returned to their original size. Further, you often insisted on having the neck areas of the teeth near the gum tissues to be wider and more square. This results in the restorations being overcontoured and uncleanseable leading to long-term gum disease. To fulfill your wishes would have ultimately been malpractice.

As Vangie explained to you on July 2, our office policy in cases like yours is to charge $700 an hour for practice chairtime. This time will not include the time spent corresponding with you, planning your case, my time to work on your waxups and to remake your upper temporaries nor the hours spent by ████ to alter your labwork/waxups and work with you. Additionally, we are waiving the normal fee of $150 for the cost to fulfill your request for the extensive

12750 S.W. 68th Avenue · Portland, OR 97223
Phone: 503-639-5136 · Fax: 503-620-0187

*Document 3-C*

*101*

Ms. Jackie Pinch
August 31, 2009
Page Two

duplication of your entire file, i.e. duplicating photos on CDs, printing
chartnotes, copying xrays, coping chart, downloading photos and copies of the
eight models you requested. The following represents the dates and times my
chairtime was devoted solely to you and your case:

|  | **Hours** |
|---|---|
| Friday, March 20, 2009 - Diagnostics | 1.5 |
| Tuesday, March 12, 2009 – Prepare Mandibular | 10 |
| Monday, May 18, 2009 -- Prepare Maxiliary | 13 |
| Thursday, June 4, 2009 – Adjustments to Temporaries | 2.5 |
| Wednesday, June 17, 2009 -- Adjustments to Temporaries | 2 |
| Total Practice Chairtime Hours | 29 |

As I have invested over 29 clinical hours (which excludes your first office visit)
on your case before you decided to end our relationship, in accordance with
our office policy, the cost at $700 is $20,300. Of the original $37,215 quoted for
the agreed treatment plan. I gave you a total payment discount of $3,701 for a
net balance due of $33,314.   I received $33,314 ($16,657 from ▆▆▆▆▆▆
and $16,657 from ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ The balance left is
$13,014.

In signing this agreement you acknowledge that you: (1) officially ended our
relationship before the completion of your aesthetic restoration; (2) you left my
care while you were still in temporaries; (3) you resign your rights to any further
treatment by me or any doctor of Pacific Dental Institute effective immediately;
and (4) that you hold me and the entire staff at Pacific Dental Institute harmless
of any liability and/or responsibility in connection with any and all of your dental
care.

If you agree to this settlement, please sign two copies of this letter; keep one
for your files and return one for our records. Once executed and received by
Vangie, she will issue you a check $13,014 for the balance remaining on your
ledger.

Sincerely

John A. Sorensen, DMD, PhD
Board Certified, American College of Prosthodontics

Acknowledged and agreed:

_____     _____
Ms. Jackie Pinch                                          Date

Document 3-C

102



Pacific
Dental
Institute

October 28, 2009

I am writing to inform you of the exciting and momentous changes happening at Pacific Dental Institute. We have been given the opportunity to become the region's premiere specialty implant center. Our new practice will focus on giving people with major dental problems a chance to acquire a great smile. To do this, we will implement the latest scientifically-sound techniques in surgical and restorative dentistry which employs the best implant technology available. This is an exciting time for us and we look forward to pursuing this new direction. To that end, my practice will begin this transition in November.

Teaming up with me, I am pleased to welcome ██████████████████████████████
He will help to convert our practice to a full-service dental implant facility. His professional expertise and training will ensure that we provide the highest level of medical/dental care in the region.

Because of the new direction of the practice, I will no longer offer traditional prosthodontic and general dental services. It is with great regret that I will have to refer you to another general dentist or prosthodontist for your continued dental care. I believe each of the doctors listed on the attached sheet are exemplary dental professionals.

Additionally, the hygiene program will end effective October 31, 2009 with ███████████ moving to ███████████ fulltime. As you are well aware, █████ is a top-notched hygienist and has been an excellent member of our staff. We will miss seeing her on a regular basis. As I am unfamiliar with the dentist(s) at ████████ I can offer no opinion of their skill level. However, if you want her to continue to be your hygienist, her number is ███████

At this time, I want to extend my sincerest gratitude for choosing me to be your dentist and entrusting me with your dental treatment. One of the most enjoyable aspects of my practice has been establishing relationships with you and taking the time to discuss all facets of each of our lives and the world in general. I will miss that and miss seeing you. I am grateful for the opportunity to know you.

Warmest personal regard,

John A. Sorensen, DMD, PhD
Diplomate, American Board of Prosthodontics

Attachment

12750 SW 68th Avenue · Portland, OR 97223
Phone: 503-639-5599 · Fax 503-620-0187

*Document 3-D*

*103*



# Pacific Dental Institute

February 18, 2011

Ms. Jacqueline Pinch
40 Crestfield Court
Lake Oswego, OR 97035

Dear Ms. Pinch:

I reviewed your records and noted that you signed a treatment plan document acknowledging our policy of paying 25% of the total fees to start treatment, 25% on tooth preparation of the upper jaw, 25% on tooth preparation of the lower jaw, then 12.5% on cementation of each arch of restorations. Since we were 75% of the way completed when you refused to continue my care, I think that our offer to refund 39% of your fees was fair. I offered you a 10% discount if you paid for all treatment in advance. In view of your lengthy search interviewing at least five other dentists to take over your treatment and after serious consideration I would like to extend the following offer. In August 2009, I originally offered you a refund of $13,014 or 39% of the total fee. You refused it out of hand. However, in order to help you get your treatment completed by another dentist I am giving you a 50% refund of the $33,314 paid toward your full mouth rehabilitation. Kindly find enclosed Check #302949 in the amount of $16,657.

The treatment that I provided you was above the standard of care. I am sorry that despite the many hours of preparatory work by myself and my technicians as well as 29 hours of our chair-time that we were not able to satisfy your esthetic desires and unperiodontally sound restoration design wishes. Best wishes in locating a practioner that meets your expectations.

Sincerely,

John A. Sorensen, DMD, PhD
Diplomate, American Board of Prosthodontists

cc: ██████████

12750 S.W. 68th Avenue . Portland, OR 97223

*Document 3-E*

*104*



Document 3-E

105

<u>Certified Mail</u>
<u>Return Receipt Requested</u>

February 22, 2011

Dr. John Sorensen
ClearChoice Dental Implant Center
12750 SW 68th Avenue
Tigard OR 97223

Dear Dr. Sorensen,

At this time, I am awaiting the decision of the Oregon Board of Dentistry regarding this case.

In reference to all future correspondence with me, please address only myself until further notice. ███████████████████████ are no longer involved with these proceedings as I am managing this dental account.

Sincerely,

*Jacqueline Pinch*

Jacqueline Pinch

c: ███████████ Esq.

*Supporting Document 3-E*

*106*

<u>Certified Mail</u>
<u>Return Receipt Requested</u>

February 24, 2011

Dr. John Sorensen
ClearChoice Dental Implant Center
12750 SW 68th Avenue
Tigard, OR  97223

Dear Dr. Sorensen,

Enclosed is your check in the amount of  $16,657  which I am returning to you.

Sincerely,

*Jacqueline Pinch*

Jacqueline Pinch

enclosure

c: ████████████ Esq.

*Supporting Document 3-E*

*107*

August 24, 2009

Certified Mail
Return Receipt Requested

Dear Dr. Sorensen,

On July 2nd, I notified Vangi that I would no longer be working with you on my dental case. I now need to transfer this case to another dentist to take on this huge project and the reconstruction of my teeth. I have a long road to correctly complete this project.... so much work is ahead, and some of this work that has already been done will have to be re-done. In order to most safely and accurately proceed with my case, my new dentist will need all of the items of the case and the case file from your office. Presently, I will be the custodian of all of the dental items and the case file. I now need to receive from you everything relating to my case including the following:

Duplicate copies of all Xrays of mine held by your office.

Items I brought to your office from ███████ office before your initial consultation:
  1. CD of "Before" pictures
  2. Duplicate cast before any dental work began
  3. Duplicate cast after ████████ temporaries were placed on front teeth
  4. Print-out of gum pocket measurements

Items originally made in your office:
  1. Duplicate cast of teeth before you began any work, taken on March 20, 2009
  2. Duplicate casts of prepped lower and upper teeth taken on May 12th and May 18th
  3. Duplicate casts of my lower and upper teeth taken at the end of the day on May 12th and May18th
  4. Duplicate cast of upper teeth that I worked on with your technician, ████ on May 11th.
  5. My full dental records and my dental file produced and maintained by you and your office

Your written estimate of the cost of your work done on my case ending on June 22, 2009.

I will come by your office on the afternoon of Monday, August 31st in order to pick up all of the above items.

Sincerely,

*Jacqueline Pinch*

Jacqueline Pinch

Document 4-A

108

August 24, 2009

<u>Certified Mail</u>
<u>Return Receipt Requested</u>

Dear Dr. Sorensen,

On July 2nd, I notified Vangi that I would no longer be working with you on my dental case. I now need to transfer this case to another dentist to take on this huge project and the reconstruction of my teeth. I have a long road to correctly complete this project.... so much work is ahead, and some of this work that has already been done will have to be re-done. In order to most safely and accurately proceed with my case, my new dentist will need all of the items of the case and the case file from your office. Presently, I will be the custodian of all of the dental items and the case file. I now need to receive from you everything relating to my case including the following:

Duplicate copies of all Xrays of mine held by your office.

Items I brought to your office from ▮▮▮▮▮ office before your initial consultation:
1. CD of "Before" pictures
2. Duplicate cast before any dental work began
3. Duplicate cast after ▮▮▮▮▮ temporaries were placed on front teeth
4. Print-out of gum pocket measurements

Items originally made in your office:
1. Duplicate cast of teeth before you began any work, taken on March 20, 2009
2. Duplicate casts of prepped lower and upper teeth taken on May 12th and May 18th
3. Duplicate casts of my lower and upper teeth taken at the end of the day on May 12th and May 18th
4. Duplicate cast of upper teeth that I worked on with your technician, ▮▮▮▮ on May 11th.
5. My full dental records and my dental file produced and maintained by you and your office
   * Without reading these, I think the records (written) seem
Your written estimate of the cost of your work done on my case ending on June 22, 2009.   complete

I will come by your office on the afternoon of Monday, August 31st in order to pick up all of the above items.

Sincerely,

*Jacqueline Pinch*

`Jacqueline Pinch

The above checked off items were received.
    Jacqueline Pinch  Aug 31/2009

* Please see attached copy of e-mail sent Aug 28 requesting a CD of "before" pictures you took of me and my teeth on Feb 20, 2009. I still need this item. Please send it to me in the mail as soon as possible

Document 4-B

109

September 22, 2009

<u>Certified Mail</u>
<u>Return Receipt Requested</u>

Dear Dr. Sorensen,

In addition to the things I have already received from your office on August 31, 2009, I am now
sending you an official request for all of the photos you took of me, copied onto a CD. This includes
all of the "before" pictures taken of me on February 20, 2009, and all of the pictures you took of me on
May 12, May 18, and June 4. All of these photos are very important in order to safely, accurately, and
aesthetically proceed with this huge project. Please send this CD to my home address as soon as
possible. Thank you.

Sincerely,

Jacqueline Pinek

Document 4-c

110

<u>Certified Mail</u>
<u>Return Receipt Requested</u>

October 20, 2009

Dear Dr. Sorensen,

As you know, I am in the process of transferring my dental project to another dentist. Unfortunately from my experience in your office, things did not go as expected and it is necessary to work with another dentist who will take on this huge project and the reconstruction of my teeth. I came to the conclusion that under your care I was going to be unable to reach a successful result.

Listed below are four major conflicts that made it necessary to pursue another dentist:

1) The temporary restorations that you installed in my mouth created an incorrect bite. Most of the weight of my bite is presently on the front teeth which are extremely vulnerable to shifting and breaking. I have to constantly work to keep the front teeth from connecting too forcefully for this reason.
2) My upper front temporary teeth now have a large overbite, which exactly contradicts our agreed upon initial goal of bringing in my bite.
3) Aesthetically these temporary teeth are unacceptable.
4) In the last two appointments I had with you which were to adjust the temporaries, the above aspects were made worse.

Regarding the settlement letter I received from you on August 31st and which I refused to sign, it is unconscionable that you are offering only $13,014 out of the total amount paid to you of $33,314. The amount of $700 per hour of chair time has no application in this case because at no time prior to July 2nd was any per hour charge ever mentioned or made aware to me. On July 2nd when Vangi mentioned this amount "per chair hour" I couldn't believe it and it is nothing I ever would have agreed to.

Here is a listing of what lies ahead for me in this process:

1) Continue research and consulting with other dentists in order to most accurately choose an excellent dentist to whom I will transfer this case as soon as possible.
2) The new dentist will need to re-design all new temporaries in order to correct the bite and the aesthetics. And with 28 teeth already prepped, establishing a correct bite will be especially challenging.
3) Once the temporaries are right, final impressions will be taken.
4) All of the 28 permanent crowns (and veneers, if any) will then be made in a laboratory.
5) All of the permanent restorations will be placed.

I found a very direct and important piece of writing that clearly states the profound importance of the technical work on this kind of project:

*Document 4-D*

*///*



Because so many things went wrong while I was in your care, it was clear that I needed to transfer this case to another dentist in order to halt this downward spiral, re-design new temporaries, correct my bite, and move forward with the entire project as soon as possible. There are now more risks regarding the health of my gums under these temporaries, the possibility of leaks in these temps causing teeth vulnerability, and the fact that my bite is entirely incorrect. Therefore, it is necessary for me to redeem the entire amount paid to you of $33,314 in order for me to afford to pay my next dentist to take on this case and reach a successful result. With the return of these funds, I will then sign a release form releasing you of any further liability.

Please mail a check in the amount of $33,314 to ███████████, who will manage this dental account. ████████ address is:



I regret that this was the course of events that have lead to this conclusion. I will need to hear from you within 10 days from the date of this letter.

Sincerely,

Jacqueline Pinek

Document 4-D

112

Certified Mail
Return Receipt Requested

November 16, 2009

Dear Dr. Sorensen,

Regarding my letter to you dated October 20th 2009, you have not responded within the ten days that I requested.

This is a formal request for the name of your insurance company and your policy number in order to report my claim. If you have recently made any changes in your insurance, the information I am requesting would need to be that which is applicable to my case. Please provide this information to me within three days of this letter.

Sincerely,

*Jacqueline Pinch*

c: ▮▮▮▮▮▮▮▮ Esq.
enc.

Document 4-E

/13

**Treatment Plan**

**Patient:** Jackie Pinch
**Birthdate:**
**Provider:** John A. Sorensen DMD, PhD
    **Phone:** (503)639-5599
    **Office:** 12750 S.W. 68th Avenue
        Portland, OR 97223

**Chart #:** PI0010

**Date:** 02/20/2009
**SS#:**

| Ord | Th | Surf | Description | Fee |
|-----|----|------|-------------|-----|
| 1 | | Diagnostic casts | | 115.00 |
| 1 | | Diagnostic Waxup | | 500.00 |
| 1 | 2 | Crown-por/cer subst | | 1300.00 |
| 1 | 3 | Crown-por/cer subst | | 1300.00 |
| 1 | 4 | Crown-por/cer subst | | 1300.00 |
| 1 | 5 | Crown-por/cer subst | | 1300.00 |
| 1 | 6 | Crown-por/cer subst | | 1300.00 |
| 1 | 7 | Crown-por/cer subst | | 1300.00 |
| 1 | 8 | Crown-por/cer subst | | 1300.00 |
| 1 | 9 | Crown-por/cer subst | | 1300.00 |
| 1 | 10 | Crown-por/cer subst | | 1300.00 |
| 1 | 11 | Crown-por/cer subst | | 1300.00 |
| 1 | 12 | Crown-por/cer subst | | 1300.00 |
| 1 | 13 | Crown-por/cer subst | | 1300.00 |
| 1 | 14 | Crown-por/cer subst | | 1300.00 |
| 1 | 15 | Crown-por/cer subst | | 1300.00 |
| 1 | 18 | Crown-por/cer subst | | 1300.00 |
| 1 | 19 | Crown-por/cer subst | | 1300.00 |
| 1 | 20 | Crown-por/cer subst | | 1300.00 |
| 1 | 21 | Crown-por/cer subst | | 1300.00 |
| 1 | 22 | Crown-por/cer subst | | 1300.00 |
| 1 | 23 | Crown-por/cer subst | | 1300.00 |
| 1 | 24 | Crown-por/cer subst | | 1300.00 |
| 1 | 25 | Crown-por/cer subst | | 1300.00 |
| 1 | 26 | Crown-por/cer subst | | 1300.00 |
| 1 | 27 | Crown-por/cer subst | | 1300.00 |
| 1 | 28 | Crown-por/cer subst | | 1300.00 |
| 1 | 29 | Crown-por/cer subst | | 1300.00 |
| 1 | 30 | Crown-por/cer subst | | 1300.00 |
| 1 | 31 | Crown-por/cer subst | | 1300.00 |
| | | | **Sub Total:** | **37015.00** |

| | |
|---|---|
| **Treatment Plan Total** | 37,015.00 |
| **Estimated Deductible to be Applied** | 0.00 |
| **Estimated Insurance Payment** | 0.00 |
| **Estimated Patient's Portion** | 37,015.00 |

Document 5-A

114

## Treatment Plan

**Patient:** Jackie Pinch
**Birthdate:**
**Provider:** John A. Sorensen DMD, PhD
  Phone: (503)639-5599
  Office: 12750 S.W. 68th Avenue
     Portland, OR 97223

**Chart #:** PI0010

**Date:** 02/20/2009
**SS#:**

---

This treatment plan is a financial estimate based on your comprehensive examination. Fees quoted are guaranteed for 90 days only. From time to time, the treatment plan will be updated when new dental care is recommended.

Because appointments for full mouth restorations requires securing large blocks of the doctor's time, to commence a full mouth restoration, Pacific Dental Institute requires a 25% payment upon making the first appointment; 25% payment would be required for the tooth preparation of the the lower jaw; a 25% payment would be required for the tooth preparation of the upper jaw. Balance of payment due per arch (12..5% each) when lower and upper restorations are cemented.

Please be advised any treatment not listed on this treatment plan such as endodontic (root canals) or periodontal (bone-, sinus- or gum surgery) not listed on this statement will be an additional charge and due at the time the services are rendered. Further, if post and cores or buildups are not listed and required, due to loss of tooth structures, a separate fee will be charged and collected at the time the service is rendered.

In the event that temporary crowns need to be re-cemented an office visit fee will be charged after three courtesy visits.

Some patients with removable partial dentures sometimes have difficulty adapting to a removable appliance. Three adjustments visits are included with the initial fee. Additional adjustments will be billed as an office visit.

MISSED/CANCELLED APPOINTMENTS
Kindly contact our office 48 hours in advance to cancel your appointment to avoid a broken appointment charge of $100.

PAYMENT/INSURANCE POLICY
Fees for dental services are due when rendered.

PDI accepts Visa, Mastercard and Discover credit cards.

Fees for periodontal/oral surgery/implants/endodontics must be paid in full prior to scheduled surgery. 50% of fees for crowns and labwork are due at the time they are prepared; the remaining balance is due on the day the completed work is delivered. With the exception of dental services that require labwork, all services are due and payable when rendered.

As a service to you, we are pleased to submit your claim to your dental insurance with a request to reimburse insurance payment to you directly.

Acknowledged and Agreed:

_Jacqueline Pinch_     _Feb 20/09._
Patient Signature (Responsible Party)          Date

Document 5-A

115



Pacific Dental Institute
12750 SW 68th Avenue
Portland, OR 97223

(503)639-5599

PI0010    1

02/20/2009

Jackie Pinch
40 Crestfield Court
Lake Oswego, OR 97034

| Jackie | | | Comp oral eval-new/estab pat | 200.00 | |
| Jackie | . | | Check Payment - Thank You Ch # 5215 | | -200.00 |

| 0.00 | − | -200.00 | + | 200.00 | = | 0.00 |

©DENTRIX 1987-2005    DLWLK 1

*Document 5-B*

*116*



Pacific Dental Institute
12750 SW 68th Avenue
Portland, OR 97223

(503)639-5599

PI0010    1

04/07/2009

Jackie Pinch
40 Crestfield Court
Lake Oswego, OR 97035

-33314.00    -33314.00

| | | | |
|---|---|---|---|
| Jackie | Tuesday – May 12, 2009 | 9:00 am | Prep Mandi |
| Jackie | Thursday – May 21, 2009 | 9:00 am | Prep Maxillary |
| Jackie | Wednesday – May 27, 2009 | 4:00 pm | Temp Checks |
| Jackie | Tuesday – June 2, 2009 | 1:30 pm | Final Impr |

©DENTRIX 1987-2005    DLWLK 1

Document 5-C

117



Pacific Dental Institute
12750 SW 68th Avenue
Portland, OR 97223

(503)639-5599

PI0010          1

03/30/2009

Jackie Pinch
40 Crestfield Court
Lake Oswego, OR          97035

$

PLEASE RETAIN THIS PORTION OF THE STATEMENT FOR YOUR RECORDS



| 02/28/2009 | Balance Forward | | | 0.00 | |
| 03/30/2009 | Check Payment - Thank You Ch # | | Jackie | | -16657.00 |
| 03/30/2009 | Check Payment - Thank You Ch # | | Jackie | | -16657.00 |

| 0.00 | -33314.00 | + | 0.00 | - | -33314.00 |

Insurance Estimates ("Ins. Est.") and "Please Pay" amounts based on insurance estimates are provided as a courtesy. In the event that your insurance carrier pays less than the estimated amount, you are responsible for the unpaid balance.

©DENTRIX 1987-2005          DLSTM 10          Pacific Dental Institute - 12750 SW 68th Avenue
Portland, OR 97223 (503)639-5599

*Document 5-D*

118

**Treatment Plan**

Patient: Jackie Pinch
Birthdate: 04/25/1960

Chart #: PI0010

Date: 03/30/2009
SS#:

Provider: John A. Sorensen DMD, PhD
Phone: (503)639-5599
Office: 12750 S.W. 68th Avenue
Portland, OR 97223

| Ord | Th | Surf | Description | Fee |
|-----|----|----|-------------|-----|
| 1 | | | Diagnostic casts | 115.00 |
| 1 | | | Diagnostic Waxup | 500.00 |
| 1 | 2 | | Crown-por/cer subst | 1300.00 |
| 1 | 3 | | Crown-por/cer subst | 1300.00 |
| 1 | 4 | | Crown-por/cer subst | 1300.00 |
| 1 | 5 | | Crown-por/cer subst | 1300.00 |
| 1 | 6 | | Crown-por/cer subst | 1300.00 |
| 1 | 7 | | Crown-por/cer subst | 1300.00 |
| 1 | 8 | | Crown-por/cer subst | 1300.00 |
| 1 | 9 | | Crown-por/cer subst | 1300.00 |
| 1 | 10 | | Crown-por/cer subst | 1300.00 |
| 1 | 11 | | Crown-por/cer subst | 1300.00 |
| 1 | 12 | | Crown-por/cer subst | 1300.00 |
| 1 | 13 | | Crown-por/cer subst | 1300.00 |
| 1 | 14 | | Crown-por/cer subst | 1300.00 |
| 1 | 15 | | Crown-por/cer subst | 1300.00 |
| 1 | 18 | | Crown-por/cer subst | 1300.00 |
| 1 | 19 | | Crown-por/cer subst | 1300.00 |
| 1 | 20 | | Crown-por/cer subst | 1300.00 |
| 1 | 21 | | Crown-por/cer subst | 1300.00 |
| 1 | 22 | | Crown-por/cer subst | 1300.00 |
| 1 | 23 | | Crown-por/cer subst | 1300.00 |
| 1 | 24 | | Crown-por/cer subst | 1300.00 |
| 1 | 25 | | Crown-por/cer subst | 1300.00 |
| 1 | 26 | | Crown-por/cer subst | 1300.00 |
| 1 | 27 | | Crown-por/cer subst | 1300.00 |
| 1 | 28 | | Crown-por/cer subst | 1300.00 |
| 1 | 29 | | Crown-por/cer subst | 1300.00 |
| 1 | 30 | | Crown-por/cer subst | 1300.00 |
| 1 | 31 | | Crown-por/cer subst | 1300.00 |
| | | | **Sub Total:** | **37015.00** |
| A | 5 | | Clinic crown lengthen-hard tiss | 795.00 |
| A | 12 | | Clinic crown lengthen-hard tiss | 795.00 |
| A | 21 | | Clinic crown lengthen-hard tiss | 795.00 |
| A | 28 | | Clinic crown lengthen-hard tiss | 795.00 |
| | | | **Sub Total:** | **3180.00** |

| Treatment Plan Total | 40,195.00 |
|-----|-----|

*Document 5-E*

*119*

**Patient Progress Notes**

**Patient:** Jackie Pinch

**Birthdate:** 04/25/1980

**Provider:** John A. Sorensen DMD, PhD

**Phone:** (503)639-5599

**Office:** 12750 S.W. 68th Avenue
Portland, OR  97223

**Date:** 08/26/2009

**SS#:**

**Chart #:** PI0010



```
 1   2   3   4   5   6   7   8   9  10  11  12  13  14  15  16

32  31  30  29  28  27  26  25  24  23  22  21  20  19  18  17
```

**Progress Notes**

| Date | Tooth | Surf | Proc | Prov | Description | Stat | Amount |
|------|-------|------|------|------|-------------|------|--------|
| 02/20/2009 | | | | | Clinical Note | | |

———— Fri - Feb 20, 2009 ————JAS/LDD

BP:

HHR/PARQ.  Pt presents comp oral evaluation.

CC:

History of primary dental issues' had great teeth her whole life. Pt hadn't gone to dentist for a long time, was a low maintained dental pt, and teeth were gone. Pt's skin started to have problems; pt was dancing and had a reaction to cologne, a few weeks later pt had a rash of blue and red, was sent to the emergency room and was diagnosed with infitago (sp...Skin disease). Pt was in pain because it was sensitive so pt's hygiene went down hill. Pt then started to eating sour gummies all the time. skin healed inside, it was lumpy though. pt moved back to Lake Oswego. Pt's gums were bad at this point. Regular mouth wash was extremely painful. Pt answer was to rinse with vinegar water daily, pt knew it was good for gums, but didn't know it was bad for the teeth. Pt used vinegar for about a year. Pt's teeth began to fill

Continued on Next Page

*Dental File - page 1*

120

**Patient Progress Notes**

Patient: Jackie Pinch
Birthdate: 04/25/1960
Provider: John A. Sorensen DMD, PhD
  Phone: (503)639-5599
  Office: 12750 S.W. 68th Avenue
       Portland, OR 97223

Date: 06/26/2009
SS#:

Chart #: PI0010

**Progress Notes Continued**

| Date | Tooth | Surf | Proc | Prov | Description | Stat | Amount |
|------|-------|------|------|------|-------------|------|--------|

"weird". Pt than began to use dental whitening strips for 7 days straight and pt's teeth started to hurt. Pt stopped using them, a few days later the pt's enamel started to fall off her teeth. Pt says teeth were achy, not sore. The teeth did get whiter. Pt's client referred to dentist who said her teeth wore fine, and the hygienist said pt's teeth seemed smaller than they should be. Pt left that dentist office, and went to another dentist who said they would get better, it was Dr ▮▮▮▮ The 3rd dentist finally said pt's teeth need to be re-done; Pt was than referred to Dr ▮▮▮▮ This was 5 yrs ago. For 10K pt was told she could do the 4 max anterior teeth. Pt was offered RCT and pt didn't think she needed RCT's. Another client referred pt to ▮▮▮▮ When pt saw this Dr He was the first one who had a clue what to do. Pt was excited for him to do this. Pt's 1st appt of preparing teeth made her feel "weird". Pt reports that the Dr didn't know if he was working with dentin or enamel. Pt says the Dr was changing the plan. Pt was trying to be careful. Dr ▮▮▮▮ placed temps that were missed shape, and the dentist changed them. Pt noticed large gaps between the temps and tooth. Pt told the dentist and he didn't do anything. When pt looked at temps before cemented they started to come off the teeth and the dentist didn't want the pt to see them like that. When pt got home, she didn't approve of the bottom temps because they were at an angle. Pt went back in to have the temps fixed, and dentist fixed. Pt asked about color, and the answer was A1 or B1, and pt was confused. Pt chose the whiter shade. Pt brought a piece of paper in of all the changes she wanted with a drawing, and the dentist assured pt that the gaps will be fixed. Next visit was delivery; the temps had to be drilled off. This all happened in August 2008. The dentist was overly excited. About a week later the pt noticed that the color was wrong, it was too dark. Pt canines seem to be "sticking out" and pt told the dentist. Pt has had a few consults, but dentist keeps telling pt that she chose the shade. He offered to re-do them but pt would have to pay for the lab fee's. Pt didn't want him to re-do them because the dentist was second guessing himself, telling the pt that they may not turn out as well, and there might be a risk of gum recession. Pt went to three other dentists who said it was good dentist. Pt asked if she could only re-do the top 6 and the dentist's response was "no I can't afford it." The 2nd of the 3 consults, pt asked to show the temps for the rest of the teeth, and the pt thought they looked like onley instead of crowns. The 3rd consult the assistant told the pt that the Dr was going to make the temps again without the pt saying something. The dentist than stated he's not going to re-dot the temps, than pt
Radiographic findings:
Dx:
Tx today: Dr S explains to pt the process before we cement, and get the pt's approval. Pt shows 3mm of gums on the upper, and show's a lot of the lower teeth.
Tx plan:
Futur

| Date | Tooth | | Proc | Prov | Description | Stat | Amount |
|------|-------|---|------|------|-------------|------|--------|
| 02/20/2009 | | | D0150 | DMD1 | Comp oral eval-new/estab pat | C | 200.00 |
| 02/20/2009 | 5 | | D4249 | DMD1 | Clinic crown lengthen-hard tis | TP | 795.00 |
| 02/20/2009 | 6 | | D2750 | DMD1 | Crown-porc fuse high noble | EO | |
| 02/20/2009 | 7 | | D2750 | DMD1 | Crown-porc fuse high noble | EO | |
| 02/20/2009 | 8 | | D2750 | DMD1 | Crown-porc fuse high noble | EO | |
| 02/20/2009 | 9 | | D2750 | DMD1 | Crown-porc fuse high noble | EO | |
| 02/20/2009 | 10 | | D2750 | DMD1 | Crown-porc fuse high noble | EO | |
| 02/20/2009 | 11 | | D2750 | DMD1 | Crown-porc fuse high noble | EO | |
| 02/20/2009 | 12 | | D4249 | DMD1 | Clinic crown lengthen-hard tis | TP | 795.00 |
| 02/20/2009 | 21 | | D4249 | DMD1 | Clinic crown lengthen-hard tis | TP | 795.00 |
| 02/20/2009 | 22 | | D2750 | DMD1 | Crown-porc fuse high noble | EO | |
| 02/20/2009 | 23 | | D2962 | DMD1 | Veneer (porcein lam)-lab | EO | |
| 02/20/2009 | 24 | | D2962 | DMD1 | Veneer (porcein lam)-lab | EO | |
| 02/20/2009 | 25 | | D2962 | DMD1 | Veneer (porcein lam)-lab | EO | |
| 02/20/2009 | 26 | | D2962 | DMD1 | Veneer (porcein lam)-lab | EO | |

Continued on Next Page

Dental File - page 2

121

**Patient Progress Notes**

Patient: Jackie Pinch
Birthdate: 04/25/1980

Chart #: PI0010

Date: 08/26/2009
SS#:

Provider: John A. Sorensen DMD, PhD
Phone: (503)639-5599
Office: 12750 S.W. 68th Avenue
Portland, OR 97223

**Progress Notes Continued**

| Date | Tooth | Surf | Proc | Prov | Description | Stat | Amount |
|------|-------|------|------|------|-------------|------|--------|
| 02/20/2009 | 27 | | D2750 | DMD1 | Crown-porc fuse high noble | EO | |
| 02/20/2009 | 28 | | D4249 | DMD1 | Clinic crown lengthen-hard tis | TP | 795.00 |
| 02/23/2009 | | | | | Clinical Note | | |

——————— Fri – Feb 20, 2009 ———————(new pt comp exam notes continued)
Pt has only paid $14,000, and the whole amount was about $30,000. Pt thinks that the teeth
look grey, and others are giving the pt that feed back as well. Pt feels that the upper canines
are sticking out. Dr explains that we would repair one arch at a time, and invasion with the
temps how the shape and bite will work out. Turned the veneer temps into crown temps with
acrylic. When pt was getting the permanents, 3 wks later, the dentist learned how to do the
dentin bonding agent. Pt didn't feel comfortable with it because 3 wks earlier the dentist didn't
know how to do this. Original plan was to do the front, than the right and than left sides.
Today's bc: Pt doesn't have any sensitivity. Pt was treated by ████ and had an "acrylic
blobs" method done to use on teeth to hold them in a certain position. Pt says her mouth is
comfortable where it is now. Pt now says that her upper front teeth are sensitive, but not that
horrible. At the time right now can't feel any sensitivity? Pt wants to use the rest of her money
to fix the upper and eventually re-do the lower as well. Midline deviates the left about about
1mm. There is bonding material on the posterior, pt referred to it as acrylic blobs, which was
just a temporary approach. 1.5mm AP movement ████ did the lab work. Dr Sorensen took
diagnostic photos. No contact on the anterior. Pt is not using fluoride. CE=Negative.
Composite build ups for O contacts on all mand. Posterior teeth. All O contacts on the max are
on the L cusps. Contacts between the canine ceramic restorations, and not and the incisors.
Would want to open bite up 1mm of where it is now. Would make the posteriors longer.
Discrepancy of the length of #6 that has a clinical length of 9.5 mm, the restorations on #5
that we would make would be about 7mm. Dr S show's pt in a pt mirror about the length.
Gums look good, a little tarter on the anterior lowers. Used empress restorations. Too
translucent, picking up the under A8 color of the tooth.
TX possibly crown lengthening on max premolars.
Presented pt with tx plan and had pt sign. Pt wants to come in about every 6 months to have
bonding or acrylic placed on the posterior teeth.

03/20/2009                                              Clinical Note
——————— Fri – Mar 20, 2009 ———————JAS/LDD  PARQ/HHR
Pt present for follow up. Took 2 alginates of the upper and two of the lower. Took one kols
bow. Pt has many questions for Dr Sorensen. Scheduled a follow up appointment to show pt
wax up compared to the teeth she has now and to answer all her questions.
NV April 7

05/12/2009                                              Clinical Note
——————— Tue – May 12, 2009 ———————JAS/LDD  PARQ/HHR
Pt had asked ████ to shorten the teeth-now there out of contact-pt thought that he would
have told pt that's not correct. Pt also discussed re-shaping the gums with both ████ and Dr
S-pt stated she never spoke of this. PARQ the gums and how the gums and teeth are. Can
make small changes but not large changes. Pt wants the teeth to be less grey tone, not
yellow. Will use B1-pt is a bit lighter than B1-should we use the bleaching color for the teeth to
compare it? Need to use B1 and use a more opaque material. Better to air more light-can
always tone down. Pt has a couple mm of tarter. Used 2 carps marcaine 1:100,000 EPI. Took
photos. Removed veneers #22-27. Then prepped teeth #18-31. Used laser around L of #30
where tooth was cracked. Took 2 lower alginate impressions and used mach2 and blue
mouse. Dr S made temps on the lab. Fabricated-checked bite and adjusted. Cemented with
systemplink-removed excess and light cured. Gave PO instructions. 0 complications.
NV may 18 prep maxilla

Continued on Next Page

*Dental file – page 3*

**122**

**Patient Progress Notes**

Patient: Jackie Pinch
Birthdate: 04/25/1960

Chart #: PI0010

Date: 08/26/2009
SS#:

Provider: John A. Sorensen DMD, PhD
Phone: (503)639-5599
Office: 12750 S.W. 68th Avenue
Portland, OR 97223

**Progress Notes Continued**

| Date | Tooth | Surf | Proc | Prov | Description | Stat | Amount |
|------|-------|------|------|------|-------------|------|--------|
| 05/12/2009 | | | D0470 | DMD1 | Diagnostic casts | C | 115.00 |
| 05/12/2009 | | | 66612 | DMD1 | Diagnostic Waxup | C | 500.00 |
| 05/12/2009 | 18 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 19 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 20 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 21 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 22 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 23 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 24 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 25 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 26 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 27 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 28 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 29 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 30 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/12/2009 | 31 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | | | | | Clinical Note | | |

——————— Mon - May 18, 2009 ——————JAS/LDD  PARQ/HHR

Pt present for prep of max. Pt requests the four ant. teeth are sens. and that not very much tooth structure be removed. Dr S told pt it will be just like the lower, remove some, check, and remove. #3 is sensitive-has a filling. Pt feels it's on the verge of aching. pt cracked it about 1 yr ago eating something hard. Pt wanted to see the wax up again-pt is very happy with them. Pt said the lower teeth are too gappy around the caninee- that it's not smooth around the curve. Dr S explains that if we over contour it we can cause plaque build up, bone loss, gum issues, ext. Gingival embrasers and the size is what the pt is referring to. Teeth are malpositioned. Used 8 carps marcaine 1:100,000 EPI. Pt states there is a roll to her bite-the angles of the sides on the mand. are diff. position of teeth are diff though originally-pt is not symmetrical to start off as. It's not a visional problem, but a mental. Pt had balanced teeth before she wrecked them. Pt states were trying to correct the teeth. Dr S says we can concentrate to adding to this and making adjustments. Adding to the length from #16-21. Pt doesn't want the front gums lasered. Offered to do free but pt doesn't want to-with the problems we have had Dr S doesn't know how we can make the teeth the same vertically without laser-pt states she just wants them to blend horizontally. Dr S tells pt it's not enough to make a diff. Existing restorations are slightly lighter than B1 but defiantly not bleaching B040. Right now existing tooth structure is ND6. Average about 2mm thickness of porc. on f. will try to strike a balance between bringing them back and blocking out the dark. Prepped 1st the 6 ant teeth. than L side than R side. Took 2 upper alginate impressions of temps and placed mach3 and blue mouse inside impressions. Dr S made temps with shade OM1-pt called and asked Vangie to change shade-B1 was not bright enough for her. Pt got shade from home bleaching kit. Fabricated temps. Tried in, checked and adjusted bite. Added XWD fillc supreme comp. and light cured. Took 1 alginate of temps and one with temps off. Cemented with systemp link and light cured each surface. Gave specific instructions for home care dealing with temps and what NOT to do!

Pt when first saw temps seemed to like them a lot. Loves the color. Pt thinks that the neck on the teeth on the centrals are too pointy-pt doesn't want them to be more pointy-Dr explains that the veneers before were over contoured. Pt says she wants them just barely more added. Pt says that the veneers before were working before, that they were comfortable. Dr S says that the gums were inflamed before bc of this. Pt is self conscious of the shape of #8, #9. Pt said she'll have to go home and see if she likes the color of the uppers. Pt doesn't like the lower color-greenish.

NV may 27 check temps-once the temps are all in we can work more on the shape and
Continued on Next Page

*Dental file - page 4*

/23

**Patient Progress Notes**

Patient: Jackie Pinch
Birthdate: 04/25/1960
Provider: John A. Sorensen DMD, PhD
Phone: (503)639-5599
Office: 12750 S.W. 68th Avenue
Portland, OR 97223

Chart #:PI0010

Date: 06/26/2009
SS#:

**Progress Notes Continued**

| Date | Tooth | Surf | Proc | Prov | Description | Stat | Amount |
|------|-------|------|------|------|-------------|------|--------|
| | | | | | contours. | | |
| | | | | | **take off the aspect of the palatal cusps. | | |
| 05/18/2009 | 2 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 3 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 4 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 5 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 6 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 7 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 8 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 9 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 10 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 11 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 12 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 13 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 14 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/18/2009 | 15 | | D2740 | DMD1 | Crown-por/cer subst | C | 1300.00 |
| 05/21/2009 | | | | | Clinical Note | | |

——————— Thu – May 21, 2009 ——————LDD  Phone conversation
Pt wants to go back to the other teeth before he changed them (referring to the wax up).
Wants the bite taller for the new front teeth. Pt feels like the teeth need to more cusps, bite
doesnt fill right. Pt wants the bite and the teeth, especially the front teeth to be just right, pt
feels that the front upper teeth are too little as well. Wants them to be exactly like the wax up.
Pt knows each tooth has its own anatomy-pt feels that its been "smoothed" down too much.
"Exactly like the model!" pt feels Dr S changed them too much on monday-so there not
identical to the model. Pt chose Dr S because he's an expert about bites and restorative
dentistry per pt. Bite is hitting to much in the front, the cusps in the back are not present states
pt. She seems very worried, but expressed how appreciative she is for all the hard work.
05/25/2009                                        Clinical Note
——————— Mon – May 25, 2009 ——————Just finished phone conversation with Jackie.  When
I told her that I was looking forward to seeing her on Wednesday to alter her mx temps,
correct the occlusion, and even offered to have ▇▇▇ remake her temps #6-11.  She brought
up a number of concerns and said she wanted to think about it another week and was
therefore was cancelling her appt this week.  Upon further quesitoning she admitted that she
was going to have another dentist evaluate the work.
     I asked her what her concerns were? She said:
1. " I heard you say that you let ▇▇▇ go because you did not have enough work for two
technicians and that he did bad work." I told her I dod not say that ▇▇▇ did bad work but she
was quite insistent that I did say that.
2. She said that I cut too much tooth structure off.  "You said you were just going to grind off
the porcelain and cement that was it."  I informed her that I took very little additional axial
tooth structure. I only dropped the margins slightly below the level of the gingiva because of
the big change in shade we are making from A5 to Bleach 020.
3. She said I wanted you to make the teeth more rounded at the gumline and you made them
more pointed.  I told her that just because she guided ▇▇▇ in the lab to add more wax to
round off or square off the gum line area does mean I can actually do that.  I told her that
there are limits to how out we can build the teeth and avoid causing periodontal disease.
Despite my offer to remake the temps from 6-11, modify the occlusal plane and work with her
on the Wednesday appt, she was insistent on not wanting to come in until after she has
another dentist evaluate her temps.  I told her that it was not fair because I still have much
work to do on them until I am happy with them.  JS
                    Continued on Next Page

*Dental file - page 5*

**Patient Progress Notes**

Patient: Jackie Pinch
Birthdate: 04/25/1960
Provider: John A. Sorensen DMD, PhD
   Phone: (503)639-5599
   Office: 12750 S.W. 68th Avenue
      Portland, OR 97223

Chart #: PI0010

Date: 08/26/2009
SS#:

**Progress Notes Continued**

| Date | Tooth | Surf | Proc | Prov | Description | Stat | Amount |
|------|-------|------|------|------|-------------|------|--------|

06/04/2009                            Clinical Note
          ——————— Thu – Jun 4, 2009 ——————JAS/LDD  PARQ/HHR
     Pt present for adjustments of temps. PARQ different shades and bleaching shades. Right now
pt is at a 020 bleaching shade. Dr S shows pt the new temps ▮▮▮▮made-not as pointy at the
gums. Dr explains that we took an impression of the temps after we made them, than redid
them. Pt took the temps we made and looked at the mirror to compare them. "Pt doesn't
know, just is not sure". Dr S explains to the pt that we can work with them, take some off and
add. Pt has been avoiding chewing, especially on the anterior. Pt feels like when she looks at
the teeth, everything looks in alignment, but the lower jaw is off, pt thinks the posterior teeth are
too high on the left side compared to the other side. Than the pt said it "swoops" down going
toward the anteriors. Around #18 and 19 remove some off of the cusps. Pt wants the linguals
to be more smooth, without any bumps. Dr explains that's how natural teeth are, but will go
ahead and smooth them out. When Dr said that, pt decided to place them in and see how
they feel since that's how natural teeth are. Pt now has a sm. lisp and thinks that may be the
cause bc its not "smooth". Dr agrees that the cusp are a bit lower, and will work with it.
Removed temps and cleaned. Placed new temps, and made adjustments. Showed pt. Pt
wants some changes. Pt likes the temps, said there a lot better. Says she will have to live
with them for a little while to see what changes she wants to make at the next appt. Still need
to fix the bite. Polished. Cemented with systemp link, removed excess, light cured and
removed remaining excess. 0 ocmplications. Pt was very excited about the temps.

06/11/2009                            Clinical Note
          ——————— Tue – May 12, 2009 —————JAS/LDD  PARQ/HHR
     Pt had asked ▮▮▮▮o shorten the teeth-now there out of contact-pt thought that he would
have told pt that's not correct. Pt also discussed re-shaping the gums with both ▮▮▮nd Dr
S-pt stated she never spoke of this. PARQ the gums and how the gums and teeth are. Can
make small changes but not large changes. Pt wants the teeth to be less grey tone, not
yellow. Will use B1-pt is a bit lighter than B1-should we use the bleaching color for the teeth to
compare it? Need to use B1 and use a more opaque material. Better to air more light-can
always tone down. Pt has a couple mm of tarter. Used 2 carps marcaine 1:100,000 EPI. Took
photos. Removed veneers #22-27. Than prepped teeth #18-31. Used laser around L. of #30
where tooth was cracked. Took 2 lower alginate impressions and used mach2 and blue
mouse. Dr S made temps on the lab. Fabricated-checked bite and adjusted. Cemented with
systemplink-removed excess and light cured. Gave PO instructions. 0 complications.
NV may 18 prep maxilla

06/17/2009                            Clinical Note
          ——————— Wed – Jun 17, 2009 —————JAS/LDD  PARQ/HHR
     Pt says she has hard time speaking-lisp. Pt said the lowers are cut to be crowns-Dr S explains
that there veneers. Pt said there's room there for crowns. Pt said plaque is building up=Dr S
explains to pt thats where is accumulates. Pt says the reason she wants a full crown is
because it would be a smoother surface, and bc pt did so much damage previously she wants
to protect the area. Dr S says that area had the least erosion. Pt said its just a thought. Pt said
the lower left side angle needs to be corrected. A lower tooth looks cricked to pt-#26. As far
as the lisp, pt said its caused from the lump on the upper. Dr S said he will smooth them out. Pt
said Dr ▮▮▮▮▮had a smooth surface. Pt said "We need to definently-when her and ▮▮▮▮
worked on the teeth, there were originally in, and now they are way out." Pt said "My front
teeth are toatlly connecting, scary wavy in front". Pt has been mashing food so that the front
teeth won't connect. Pt thinks right now the height of the lower teeth are higher than the
upper teeth. Pt said once we disconnect the front-pt doesn't think there wil be anything
stopping the teeth. Dr S explains if we take off the back of the teeth, it will be a stronger bite
in the back, and lighter in the front. Dr S asked pt if the teeth look too long. Pt answered that
                Continued on Next Page

*Dental file – page 6*

125

**Patient Progress Notes**

Patient: Jackie Pinch
Birthdate: 04/25/1960
Provider: John A. Sorensen DMD, PhD
Phone: (503)639-5599
Office: 12750 S.W. 68th Avenue
         Portland, OR 97223

Chart #: PI0010

Date: 08/26/2009
SS#:

**Progress Notes Continued**

| Date | Tooth | Surf | Proc | Prov | Description | Stat | Amount |
|------|-------|------|------|------|-------------|------|--------|

the uppers need to have heighth added to them. Pt doesn't want the upper to look any
shorter. Dr S answeres that they will look the same length, but deeper. Pt states " one dimema
when she smiles and looks at me straight on, the left is higher than the right side." Dr S tells pt
she wouldnt let us do crown lenghthing, and pt said she didn't want any bone removed.
PARQ crown lengthing procedure. Dr S explains since he can't do laser work on premolars,
he can't do work on the others. Pt said her teeth were never a level off at the gumline-Dr S
explains to pt thats the condition the pt came here in, and there's nothing we can do for that.
Pt says "its off a mm, and asks if the whole side can be removed, and drilled a little bit more. It
seems to pt it would connect more." Dr S explains to pt its not good for the gums to cut further
off. Pt said it may just be this one tooth that's bothering her, to change the countour. Pt thinks
if the whole shape was changed it would be okay. Dr S says he can try. Pt says she would
need adding and width to know if that's what she wants. Thinks that visually that's what it is.
Now pt says it doesnt feel off but looks off. Pt says says she doesn't like the gap, and that its
feels even bigger. Dr S says he will try flatening out the canines. For the lower convert the
veneers to crownw #23-26 per pt request. Adjusted per pt request, added comp. to #21 #22
cusp. Shortened #18 d cusp per pt request. Checked bite and made many adjustments.
Shortened mand. anterior teeth. Pt said she doesn't want the grooves inbetween the teeth. Pt
wants the teeth to be a straight line across, with no grooves. Mand. ant. temps came off.
Cleaned out and re-cemetned with systemp link, light cured, removed excess.
NV July 22-adj. temps.

06/22/2009                                                    Clinical Note
——————— Mon – Jun 22, 2009 ———————vps for JAS:  Pt sent email to JAS requesting that she
be able to sit with [   ] o reshape her temps. JAS explained via email that the last time he let
her do that, the temps were too big and he ended up having to shave off most of the excess
waxup (especially around the gingiva).  She phoned in this a.m. to tell vps that she had a
stomach ache and she wasn't coming to the appt.  VPS offered her 3:00 p.m. the next day
(6/23)  but she declined.  Pt did not resched appt. Pt cancelled all appts made.

07/02/2009                                                    Clinical Note
——————— Thu – Jul 2, 2009 ———————VPS:  9:35 A.M. CALLED PT TO RESCHEDULE THE
APPT. SHE CANCELLED ON 6/22/09.  Pt returned call said she wasn't happy right now and
was trying to evaluate what her next step was. VPS advised patient that we deduct chair time
at $700 per hour and then refund the difference. VPS explained  to patient that chairtime was
defined as time spent with the doctor and when doctor was working on her case and would
not include the time she spent with [   ] the technician, or time JAS spent planning her case
redoing her waxups everytime she changed her mind about her temporaries or corresponding
with patient. She said she would think about that.

Dental file - page 7

126



Jackie Pinch <jpinch25@gmail.com>

---

## re: reviewing treatment plan

18 messages

**Dr. John Sorensen** <drjohn@pacdent.com>                         **Sun, Mar 1, 2009 at 6:12 PM**
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Hi Jackie:

I apologize for not getting back to you sooner. Somehow I missed your email and I left for Chicago last
Wednesday to lecture at a couple of meetings.
Anyway, for the $21,415 paid up front in cash would give you a 5% discount.
But, I must tell you that I have some reservations about doing only the back teeth and utilizing the existing
front restorations. If I use what you currently have, there are some compromizes I will have to make. If I
had full control by doing all of the restorations I could get a much nicer result. In fact, I want to redo the
front teeth so badly that I would like to make the following offer. If we redo the front teeth and do the back
teeth I will give you a 10% discount if paid up front.
I would love to do your whole mouth and get a magnificant result for you.
Finally, in my experience there is little to no chance of you needing root canals if we redo the front
restorations. In my expereince with veneers and ceramic crowns we have to perform root canals in less than
1% of the teeth we retreat.

I hope you will seriously consider my offer.

best regards,

john

---

**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Saturday, February 21, 2009 8:05 AM
**To:** "Dr. John Sorensen" <drjohn@pacdent.com>
**Subject:** reviewing treatment plan

Hi Dr. Sorensen,

It was really nice to meet you yesterday, and I know that all of us who need artificial teeth of all kinds are
very fortunate to have you in our area.

Upon returning home from your office, I looked over your treatment plan for me and I realized that your
estimate includes the cost of re-doing the front teeth, which would be ideal, I know. But for now, as we
discussed, I would only be able to afford to do the rest of the teeth, excluding the front ones at this time. Are
you comfortable with the front teeth structurally as they are right now regarding the bite in order to go
forward with the rest? If so, and excluding these 12 teeth, the total then becomes $21,415. This would bring
things closer to the ball park for us. Do you think this adjusted plan is the best use of our limited funds for
this project? Also, we would be paying in cash, and you mentioned some sort of a discount..... is it a "paying
in cash" discount? My Dad loves that sort of thing.

One note regarding the re-doing of my front teeth at this time is that I know there is a greater possibility of

*Email page 1*

**127**

root canals being needed once that procedure begins. Also, I think that asking my parents to pay again for the re-doing of a big mistake made by Dr████████nd the lab he uses would be simply unfair to my parents.

Thank you,
Jackie Pinch

---

**Jackie Pinch <jpinch@verizon.net>**                    **Mon, Mar 2, 2009 at 9:30 AM**
To: drjohn@pacdent.com

Hi Dr. Sorensen,

Thanks for getting back to me. And thanks for your enthusiasm and for your generous offer. Bummer that I did not find you sooner, before Dr. ████████began the work. If I was able to afford to pay for this myself, I would absolutely give you the go-ahead to re-do the front and do all the rest of the teeth. However, last year I had to ask my parents (divorced and both are now re-married) to split the cost of the project, which was going to be about $30,000 dollars. They were shocked and reluctant at first, but soon got on board. And now, as you know, the work that was done is not right, but about $14,000 dollars of theirs has already been handed over to this bad dentist whom I chose. So now I can't bear to ask them for more than they had originally agreed on, and so that means that about $16,000 is what is left from the original estimate.

Would you be willing to do only part of this work that is needed at this point, in the range of $16,000 or so? What about if you re-did the top 6 teeth, and then you did the next 3 teeth on each side of the top, and then one broken one on the bottom right? What do you think of this idea? Would you then be able to keep the rest of the teeth in alignment with composite material if I came in every 4 to 6 months to make adjustments to that material? And then sometime in the future, with a stroke of luck, I will be able to afford to have you do the rest of my teeth.

Thank you,
Jackie
[Quoted text hidden]

---

**Jackie Pinch <jpinch@verizon.net>**                    **Wed, Mar 4, 2009 at 9:10 AM**
To: drjohn@pacdent.com

Hi Dr. Sorensen,

Good news!!! My Dad and Mum are now on board to fund this project in full, as you stated. They will be paying you up front, and therefore will be able to take advantage of your 10% off offer, bringing the total to $33,313.50. Fortunately, I did not even have to ask, and my Dad called me yesterday and he easily realized this is the best way to go forward at this point. He then called my Mum and they are in agreement.

One thing my parents and I would like is a brief written summary of what will be happening in this procedure in layman's terms, just as a matter of curiosity and interest.

Also, I think I need a follow-up consultation with you in order to get your feedback on your plan for my teeth, to ask you some dental questions, and to review pictures of teeth and smiles. I have complete confidence in you, and I look forward to working with you on this project. Let me know how we now proceed and also whether you need my parents to come in personally to your office to sign forms, etc.

*Email page 2*

*128*

Talk to you soon,
Jackie
[Quoted text hidden]

---

**Dr. John Sorensen <drjohn@pacdent.com>**                    **Wed, Mar 4, 2009 at 12:56 PM**
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Hi Jackie:
Fantastic!
I'll write something up this weekend for you.
Please call my office to set up a consultation appointment. Before the meeting, please let me know if there is
anything specific I need to have for you.
This will be great!
John

---

**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Wednesday, March 04, 2009 9:12 AM
**To:** drjohn@pacdent.com
**Subject:** Re: reviewing treatment plan
[Quoted text hidden]

---

**Jackie Pinch <jpinch@verizon.net>**                    **Mon, Mar 16, 2009 at 11:53 AM**
To: drjohn@pacdent.com

Hi Dr. Sorensen,

I just wanted to check on whether you received my most recent email or whether it was lost in the internet
ether. I sent this email last Thursday and it included my parent's addresses. I'm looking forward to hearing
from you.

Thank you,
Jackie
[Quoted text hidden]

---

**Dr. John Sorensen <drjohn@pacdent.com>**                    **Wed, Mar 18, 2009 at 6:20 AM**
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Good morning Jackie:

Attached is a description of your treatment.
Let me know if you have any other questions.

Looking forward to seeing you on Friday.

**John**

John A. Sorensen, DMD, PhD
Director,

*Email page 3*

**129**



Jackie Pinch <jpinch25@gmail.com>

## teeth project

1 message

Jackie Pinch <jpinch@verizon.net>                                        Thu, Mar 12, 2009 at 8:24 PM
To: "Dr. John Sorensen" <drjohn@pacdent.com>

Hi Dr. Sorensen,

I was just wondering if you have had a chance to write up a brief summary of the procedure/plan for my teeth.
When you have a chance to write this up, my parents and I are keen to read it.  I will be seeing you on April 6th
for my follow-up consultation, and I'll be sure to let you know ahead of time if there is anything that may need
some preparation, as you suggested.   Please let us know when my parents can go ahead and pay for this
project, and then I'll be able to begin to schedule the appropriate appointments into your busy schedule.

Here are the addresses and phone numbers of me and my parents:

Jackie Pinch
40 Crestfield Ct.
Lake Oswego OR 97035
(503)699-1717



Thank you!
Jackie

*Email page 4*

*130*

Pacific Dental Institute
12750 SW 68th Ave.
Portland, OR 97223

**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Monday, March 16, 2009 12:54 PM
[Quoted text hidden]

[Quoted text hidden]

📎 **Pinsch Tx Description 09-3-18.doc**
34K

---

**Jackie Pinch <jpinch@verizon.net>**                                   **Thu, Mar 19, 2009 at 7:14 AM**
To: drjohn@pacdent.com

Hi Dr. Sorensen,

Thanks for the really good summary of my upcoming teeth project. I printed off a couple of copies of your summary and today I am mailing them to my parents. Also, I included a letter to them explaining how we arrived at the final cost, with 10% off the original estimate, specifically $33,314 (rounding up a bit). And then dividing this total by 2, the total financial undertaking for each of them will be $16,657.

Regarding my upcoming consultation on Friday, I wrote down some questions and I think they will be easy for you to answer. The only things I can think of that may require a little notice is that I would like to hear what you really think of my current front teeth, your general plan for the esthetics for my new teeth, and I'd like to see some pictures of smiles that you think look really great.

See you Friday!
Jackie
[Quoted text hidden]

---

**Jackie Pinch <jpinch@verizon.net>**                                   **Mon, Apr 13, 2009 at 8:47 AM**
To: drjohn@pacdent.com

Hi Dr. Sorensen,

It was good to sit and talk with you last week regarding the wax-up and tentative design of my new teeth. I can tell that you are very patient, kind, and you have high standards of excellence.

In viewing the pictures you took of my present front teeth, I realized that I really like some things about the shape of them as they currently are. We need to re-do them, I know, particularly regarding the greyish cast of the color as I (and others) see them, under normal lighting (no flash). And shape-wise, I like some of the changes that I saw in the wax-up, such as the straightening out of the lines, de-bulking the canines, and I like the idea of the extra bit of length that was added. But the wax-up did not yet look quite right to me, and we talked about some adjustments that would be made.

I am most focused on the top six front teeth, and I so want them to be as nice as possible at every stage. I know you have said you will be able to make additions and subtractions on the acrylic temps once they are installed, but then there will be so many other factors to be concerned with, in addition to aesthetics, to adjust and balance out. So if we could please take a little more time now to get the shape of the top front six teeth in the wax-up to where I am comfortable with them before we proceed to the next stage, I feel that this will really

*Email page 5*

*131*

simplify the adjustments that are needed later.

Thanks for your patience,
Jackie
[Quoted text hidden]

---

**Dr. John Sorensen <drjohn@pacdent.com>**                    **Mon, Apr 13, 2009 at 9:52 AM**
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Hi Jackie:
Hope you had a nice weekend. I was lecturing at UCLA on Saturday and sat outside having lunch and again
on Sunday for Easter brunch with my wife's family. It's still better living in Oregon.

Anyway, know problem with modifying the diagnostic waxups. If you want you can stop by and look at the
waxups again to check them off if you would like. I agree that the closer we can get to the final product from
the first step is ideal.

Have a great day,

john

---

**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Monday, April 13, 2009 9:48 AM
[Quoted text hidden]

[Quoted text hidden]

---

**Jackie Pinch <jpinch@verizon.net>**                    **Wed, Apr 15, 2009 at 2:33 PM**
To: drjohn@pacdent.com

Hi Dr. Sorensen,

Sounds like a great weekend you had. I was helping a friend clean her place to move out late Easter Eve... not
so fun. Anyway, I'll be by sometime tomorrow (Thursday) to look at the wax-ups.

Thank you,
Jackie
[Quoted text hidden]

---

**Dr. John Sorensen <drjohn@pacdent.com>**                    **Wed, Apr 15, 2009 at 10:32 PM**
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Hi Jackie:
I am busy in the morning and am lecturing in the afternoon at OHSU. Can we make it Friday?
Thanks,

john

---

*Email page 6*

**132**

**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Wednesday, April 15, 2009 3:34 PM
[Quoted text hidden]
[Quoted text hidden]

---

**Jackie Pinch <jpinch@verizon.net>**                                    Thu, Apr 16, 2009 at 6:45 AM
To: drjohn@pacdent.com

Hi Dr. Sorensen,

Yes, Friday is just fine.... I have a break in my schedule and I can make it over there in the late morning.....
around 11:30 or 12:00.

Thanks,
Jackie
[Quoted text hidden]

---

**Jackie Pinch <jpinch@verizon.net>**                                    Tue, Apr 28, 2009 at 4:29 PM
To: drjohn@pacdent.com

Hi Dr. Sorensen,

Would it be all right if I came by the office on this Wednesday or Thursday to take a look again at the wax-ups
for me?  I feel that I need to be familiar with them before they go in my mouth, and it has been a while since I
saw them in your lab.  Is it OK to stop by sometime or do I need to set a time?

Thank you,
Jackie
[Quoted text hidden]

---

**Dr. John Sorensen <drjohn@pacdent.com>**                               Fri, May 1, 2009 at 11:13 AM
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Hi Jackie:
I'm in Chicago for an Academy of Prosthodontics meeting and won't be back in Portland until Sunday night.

john

---

**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Tuesday, April 28, 2009 5:30 PM
[Quoted text hidden]
[Quoted text hidden]

---

**Jackie Pinch <jpinch@verizon.net>**                                    Mon, May 4, 2009 at 6:41 AM
To: drjohn@pacdent.com

Good Morning Dr. Sorensen,

*Email page 7*

**133**

I'm excited to get started on this teeth project, and the start date will be here soon. How about if we take a final look at the wax-up of my upper teeth on the day that we get started on the bottom teeth, on May 12th?

Jackie

[Quoted text hidden]

---

**Dr. John Sorensen <drjohn@pacdent.com>**                                    **Mon, May 4, 2009 at 6:57 AM**
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Sure, no problem.
Have a great week.

---

**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Monday, May 04, 2009 7:42 AM
[Quoted text hidden]

[Quoted text hidden]

---

**Jackie Pinch <jpinch@verizon.net>**                                    **Thu, May 7, 2009 at 12:32 PM**
To: drjohn@pacdent.com

Hi Dr. Sorensen,

I was just thinking that I won't be able to talk very well on Tuesday, the bottom teeth temps day..... regarding the final looking over of the waxups. And so would it be OK if I came by on Monday (or tomorrow, Friday, if you are going to be in) to take a look? Please understand that I'm a little anxious now that we are about to get started, and after the big teeth adventure of last year.

Thank you,
Jackie
[Quoted text hidden]

---

**Jackie Pinch <jpinch@verizon.net>**                                    **Mon, May 11, 2009 at 8:17 AM**
To: "Dr. John Sorensen" <drjohn@pacdent.com>


————— Forwarded message —————
From: **Jackie Pinch** <jpinch@verizon.net>
Date: Thu, May 7, 2009 at 1:32 PM
Subject: Re: reviewing treatment plan
[Quoted text hidden]

---

1/2/2010 8:30 PI

*Email page 8*

**134**



Jackie Pinch <jpinch25@gmail.com>

## Re: reviewing treatment plan

4 messages

**Dr. John Sorensen <drjohn@pacdent.com>**                    **Thu, May 28, 2009 at 12:27 PM**
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Hi Jackie:
I hope that you got some of your questions answered by having another dentist to talk with.
Again, I would reiterate that I want to continue your treatment to completion. To perform your treatment
correctly I need several more appointments to correct your temporary restorations.
I have attached a letter written in an attempt to clarify matters. I hope this helps and look forward to your
response and continuing your treatment.

Sincerely,


John Sorensen


**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Thursday, May 07, 2009 2:04 PM
**To:** drjohn@pacdent.com
**Subject:** Re: reviewing treatment plan

Hi Dr. Sorensen,

I was just thinking that I won't be able to talk very well on Tuesday, the bottom teeth temps day......
regarding the final looking over of the waxups. And so would it be OK if I came by on Monday (or tomorrow,
Friday, if you are going to be in) to take a look? Please understand that I'm a little anxious now that we are
about to get started, and after the big teeth adventure of last year.

Thank you,
Jackie


On Mon, May 4, 2009 at 7:57 AM, Dr. John Sorensen <drjohn@pacdent.com> wrote:
    Sure, no problem.
    Have a great week.


**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Monday, May 04, 2009 7:42 AM

**To:** drjohn@pacdent.com
**Subject:** Re: reviewing treatment plan


1 of 7                                                            6/29/2009 2:30 1

*Email page 9*

135

structurally as they are right now regarding the bite in order to go forward with the rest? If so, and excluding these 12 teeth, the total then becomes $21,415. This would bring things closer to the ball park for us. Do you think this adjusted plan is the best use of our limited funds for this project?   Also, we would be paying in cash, and you mentioned some sort of a discount..... is it a "paying in cash" discount?  My Dad loves that sort of thing.

One note regarding the re-doing of my front teeth at this time is that I know there is a greater possibility of root canals being needed once that procedure begins.  Also, I think that asking my parents to pay again for the re-doing of a big mistake made by ▇▇▇▇▇and the lab he uses would be simply unfair to my parents.

Thank you,
Jackie Pinch

---

**Jackie Pinch <jpinch@verizon.net>**                                    **Thu, May 28, 2009 at 2:00 PM**
To: drjohn@pacdent.com

Hi Dr. Sorensen,

I received your phone message, and your email message, but I did not receive your attached letter.  Would you please re-send it.

Thank you,
Jackie
[Quoted text hidden]

---

**Dr. John Sorensen <drjohn@pacdent.com>**                              **Fri, May 29, 2009 at 12:17 AM**
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Hi Jackie:
Sorry, hopefully it will be attached.
We started making the new upper front temporaries.

*Email page 10*

136

John

---

**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Thursday, May 28, 2009 2:08 PM
[Quoted text hidden]

[Quoted text hidden]

---

 **Pinch, Jackie Clarification Letter.doc**
60K

---

**noreply@google.com <noreply@google.com>**                    **Fri, May 29, 2009 at 7:36 AM**
To: jpinch25@gmail.com

You used Gmail's "Open as a Google document" link to view the attachment called "Pinch, Jackie Clarification Letter".

By doing this you saved an editable copy online at Google Docs: https://docs.google.com/Doc?
id=ddxzbqhrn_2f74v8ffj&btr=EmailImport

Google Docs allows you to:

- **Create and edit** documents, spreadsheets and presentations online, from anywhere you have Internet access.
- **Share documents with others**, even collaborating on the same document at once, in real time.
- **Know that your documents are safe**. Since your content is stored on Google's secure servers, even if something happens to your hard drive, your documents are protected.

You can always get back to Google Docs directly at https://docs.google.com

Thanks,
The Google Docs Team

*Questions? Take a quick tour or visit the Google Docs Help Center. Please note this is an automated message -- we won't see it if you Reply to this.*

---

*Email page 11*

**137**



Jackie Pinch <jpinch25@gmail.com>

# reviewing treatment plan

2 messages

**Jackie Pinch <jpinch@verizon.net>**                              Sun, May 31, 2009 at 9:27 PM
To: "Dr. John Sorensen" <drjohn@pacdent.com>

Hi Dr. Sorensen,

I just wanted to say that I thought your letter was very professional and clarifies your point of view, your goal of excellence, and your insistence of staying within the gingival and spacial rules of dentistry. I absolutely agree that we need to stay within such dental confines. I know this is a long process, and it is a very expensive process, too.

From everything I have read about full-mouth reconstruction and cosmetic dentistry, the importance of super good communication between the dentist and the client is always emphasized. I need to feel comfortable with my new smile when we are done with this project, and the fit and function are just as important as the aesthetics for the longevity of this project. I appreciate your enthusiasm and confidence, and your willingness to work closer with me in our mutual goal of a great set of teeth.

Since you and ▮▮▮▮are re-making the front teeth, I thought I would make a few notations about my thoughts about this to hopefully make things easier..... understand that I know that the rules of dentistry come first.   So here goes: ..... Please return the shape and size to the teeth that you presented earlier that day, before the top and bottom shapes were changed...... the lines on those teeth I thought were just right. But on those teeth, we do need to take in (towards the meridian) the two front teeth, like you did with the teeth in my mouth now, only maybe adding more thickness to the inside, (if this will work) thickening the biting edge, so that these teeth will be more resistant to chipping. And then we can make other adjustments as needed. I think that adding some height to some of my back teeth will give my front teeth more room to work and not touch too much.


Thanks so much.....I'll look forward to seeing you on Thursday.
Jackie



**Dr. John Sorensen <drjohn@pacdent.com>**                              Tue, Jun 2, 2009 at 9:18 PM
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Hi Jackie:
OK, will do.
See you Thursday.
john


**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Sunday, May 31, 2009 9:28 PM
**To:** "Dr. John Sorensen" <drjohn@pacdent.com>

*Email page 12*

*138*



Jackie Pinch <jpinch25@gmail.com>

# reviewing treatment plan

2 messages

**Jackie Pinch <jpinch@verizon.net>**                                    **Sun, May 31, 2009 at 9:27 PM**
To: "Dr. John Sorensen" <drjohn@pacdent.com>

Hi Dr. Sorensen,

I just wanted to say that I thought your letter was very professional and clarifies your point of view, your goal of
excellence, and your insistence of staying within the gingival and special rules of dentistry.  I absolutely agree
that we need to stay within such dental confines.  I know this is a long process, and it is a very expensive
process, too.

From everything I have read about full-mouth reconstruction and cosmetic dentistry, the importance of super
good communication between the dentist and the client is always emphasized.  I need to feel comfortable with
my new smile when we are done with this project, and the fit and function are just as important as the aesthetics
for the longevity of this project.  I appreciate your enthusiasm and confidence, and your willingness to work
closer with me in our mutual goal of a great set of teeth.

Since you and ████ are re-making the front teeth, I thought I would make a few notations about my thoughts
about this to hopefully make things easier..... understand that I know that the rules of dentistry come first.  So
here goes: ..... Please return the shape and size to the teeth that you presented earlier that day, before the top
and bottom shapes were changed...... the lines on those teeth I thought were just right.  But on those teeth, we
do need to take in (towards the meridian) the two front teeth, like you did with the teeth in my mouth now, only
maybe adding more thickness to the inside, (if this will work) thickening the biting edge, so that these teeth will
be more resistant to chipping.  And then we can make other adjustments as needed.  I think that adding some
height to some of my back teeth will give my front teeth more room to work and not touch too much.

Thanks so much.....I'll look forward to seeing you on Thursday.
Jackie

---

**Dr. John Sorensen <drjohn@pacdent.com>**                              **Tue, Jun 2, 2009 at 9:18 PM**
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Hi Jackie:
OK, will do.
See you Thursday.
john

---

**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Sunday, May 31, 2009 9:28 PM
**To:** "Dr. John Sorensen" <drjohn@pacdent.com>

*Email page 13*

**139**

 **Gmail**

Jackie Pinch <jpinch25@gmail.com>

## Mold for ▮▮▮▮

2 messages

---

**Jackie Pinch <jpinch@verizon.net>**                                         **Thu, Jun 18, 2009 at 6:53 AM**
To: "Dr. John Sorensen" <drjohn@pacdent.com>

Hi Dr. Sorensen,

Thank you for seeing me last night..... I'm sorry that I did not emphasize the main issue and reason I needed to
see you before our Monday appt. I had thought that we were going to meet with ▮▮▮ last night in order to
arrange some lab work because the top six teeth again need some size changes - both length and width. So
what should I do as far as the mold ▮▮▮ would probably need in order to make these changes? Or should I
change the Monday appt?

Thank you,
Jackie

---

**Dr. John Sorensen <drjohn@pacdent.com>**                                    **Mon, Jun 22, 2009 at 8:12 AM**
Reply-To: drjohn@pacdent.com
To: Jackie Pinch <jpinch@verizon.net>

Hi Jackie:
Sorry, I have not checked this email box in about 5 days. As I told you on the last appointment this is
something that I would do in the operatory as I can see what is biologically possible. Anything done in the
lab is fantasy and not necessarily clinically possible. So we'll do it in the operatory when I see you.

John

---

**From:** "Jackie Pinch" <jpinch@verizon.net>
**Sent:** Thursday, June 18, 2009 6:54 AM
**To:** "Dr. John Sorensen" <drjohn@pacdent.com>
**Subject:** Mold for ▮▮▮
[Quoted text hidden]

---

*Email page 14*

140

The following page is a printout from a ClearChoice web page. At the time, this web page was where ClearChoice posted job openings nation wide. In February of 2011, shortly after my Dental Board interview (January of 2011), I noticed that ClearChoice had a job opening for a Lab Tech at the Portland location, according to this web page. This opening for a Lab Tech continued to be listed on this web page until June (or July) of 2011, when this listing of all of the job openings nationwide was removed from this web page.

Supporting Document 8

141

Current Employment Opportunities with ClearChoice Dental Centers.    http://www.clearchoice.com/about-clearchoice/clearchoice-employment



**Understanding Dental Implants**     **The ClearChoice Advantage**     **Patient Information**

### *About ClearChoice*

About ClearChoice > Employment opportunities

Who is ClearChoice?

Our story

Philosophy

Leadership

Clinical Advisory Board

Business Advisory Board

For referring dentists

Career opportunities

Contact us

## ClearChoice Dental Implant Centers

## Employment opportunities

ClearChoice is the national leader in dental implants. We are always looking to hire highly motivated individuals fo

Are you interested in joining a cutting edge medical facil procedures are performed? Then we have the position f

| Job title | ClearCh |
|---|---|
| **Interactive Marketing Specialist** | Denve |
| **Outside Sales Lead Agent** | Denve |
| **Staff Accountant** | ClearC |
| **Lab Tech** | Chicag |
| **Lab Tech** | Portlai |



**Email us for a Free consultation and 3D CAT Scan (a $700 value).**

First name:
_____ *

Last name:
_____ *

Email:
_____ *

Phone:
_____

Choose a Center close to you.

--Please Select--     *

[ Submit ]

1 of 1

2/8/2011 8:56 P

*Document 8*     2/8/2011

142

April 30, 2008

Re: Jackie Pinch

I just wanted to drop you a note with the treatment plan for Jackie:

I divided it into 4 parts so you can see what we will be working on and the cost for each part. So far, ██████████took all the records needed for the Occlusal analysis – mounted case. He will spend a weekend doing the technical part for the lab and will then send it to the lab for about a month for them to wax-up the case.

Jackie's next appointment on July 1st will be for preparing all the upper and lower front teeth (12 teeth) for crowns and veneers and taking final impressions for the lab to construct these. We will also be putting temporary restorations on these teeth to keep everything aligned properly and also to give Jackie a chance to see what her new crowns will be like.

After about 4-5 weeks we will have Jackie back on August 6th to try-in the crowns and veneers and make sure everything is completed they way we want. If all is OK, we will cement the restorations.

So far we have not made appointments for the right side and left side. It will be done in much the same way as the front teeth. Each side will take two appointments and be about 4 weeks apart.

I am sure on the second appointment you may want to see what the case looks like. If you are interested, I will find out the best time for you to come in to view it.

Please do not hesitate to call if you have questions.............if I don't know the answer, I will find out for you.

Document 9-A

143



**Treatment Plan**

Patient: Jackie Pinch
Birthdate: 04/25/1960

Chart #:

Date: 04/29/2008
SS#:

Provider:
Phone:
Office:

| Ord | Th | Surf | Description | Fee |
|-----|-----|------|-------------|-----|
| 1 | | | Occlusal analysis-mounted case } | |
| 1 | 32 | | Provisional Crowns } | 1500   1425 |
| | | | | |
| 2 | 6 | | Labial veneer (porcein lam)-lab | 10,070 → |
| 2 | 7 | | Crown-porcelain/ceramic substr | |
| 2 | 8 | | Crown-porcelain/ceramic substr | |
| 2 | 9 | | Crown-porcelain/ceramic substr | |
| 2 | 10 | | Crown-porcelain/ceramic substr | TUESDAY    WEDNESDAY |
| 2 | 11 | | Labial veneer (porcein lam)-lab | |
| 2 | 22 | | Labial veneer (porcein lam)-lab | July 1   August 6 |
| 2 | 23 | | Labial veneer (porcein lam)-lab | |
| 2 | 24 | | Labial veneer (porcein lam)-lab | 7A–4p    7A–4p |
| 2 | 25 | | Labial veneer (porcein lam)-lab | |
| 2 | 26 | | Labial veneer (porcein lam)-lab | |
| 2 | 27 | | Labial veneer (porcein lam)-lab | |
| | | | | |
| 3 | 1 | | Crown-full cast high noble mtl | |
| 3 | 2 | MOD | Onlay-metallic-three surfaces | |
| 3 | 3 | MOD | Onlay-porcel/ceram-3 surface | 8407.50 |
| 3 | 4 | MOD | Onlay-porcel/ceram-3 surface | |
| 3 | 5 | MOD | Onlay-porcel/ceram-3 surface | |
| 3 | 28 | MOD | Onlay-porcel/ceram-3 surface | |
| 3 | 29 | MOD | Onlay-porcel/ceram-3 surface | |
| 3 | 30 | | Crown-porc fuse high noble mtl | |
| 3 | 31 | | Crown-full cast high noble mtl | |
| 3 | 32 | | Crown-full cast high noble mtl | |
| | | | | |
| 4 | 12 | MOD | Onlay-porcel/ceram-3 surface | |
| 4 | 13 | MOD | Onlay-porcel/ceram-3 surface | |
| 4 | 14 | MOD | Onlay-porcel/ceram-3 surface | 8407.50 |
| 4 | 15 | MOD | Onlay-metallic-three surfaces | |
| 4 | 16 | | Crown-full cast high noble mtl | |
| 4 | 17 | | Crown-full cast high noble mtl | |
| 4 | 18 | | Crown-full cast high noble mtl | |
| 4 | 19 | | Crown-porc fuse high noble mtl | |
| 4 | 20 | MOD | Onlay-porcel/ceram-3 surface | |
| 4 | 21 | MOD | Onlay-porcel/ceram-3 surface | |

Treatment plan total     29,800

w/disc    28,310.00

( 5% disc
for paying in full )

Document 9-A

144

# SINGLE FAMILY LEDGER

**Date:** 04/11/2008

**Page:** 1

**Guar Name:** Jackie Pinch
40 Crestfield Ct.
Lake Oswego, OR 97035-1306

**Chart Number:**

**Billing Type:** 1

| DATE | TEETH | DESCRIPTION | PATIENT | CHARGE | PAYMENT | BALANCE |
|------|-------|-------------|---------|--------|---------|---------|
| 03/30/2008 | | Balance Forward | | 266.00 | | 266.00 |
| * 03/31/2008 | | Check Payment - Thank You | Jackie | | -266.00 | 0.00 |
| 04/01/2008 | | Oral/Facial Photographic Images | Jackie | 0.00 | | 0.00 |
| 04/01/2008 | | Records | Jackie | 0.00 | | 0.00 |
| 04/11/2008 | | Removable appliance therapy | Jackie | 340.00 | | 340.00 |
| 04/11/2008 | | Check Payment - Thank You | Jackie | | -323.00 | 17.00 |
| 04/11/2008 | | Courtesy Discount | Jackie | | -17.00 | 0.00 |



| | |
|---|---|
| **TOTAL FAMILY BALANCE AS OF 04/11/2008:** | 0.00 |
| YTD Finance Charges: | 0.00 |
| YTD Late Charges: | 0.00 |
| YTD Family Payments: | 589.00 |
| YTD Insurance Payments: | 0.00 |

Procedures that have been placed in History.

*Document 9-B*

*145*

# SINGLE FAMILY LEDGER

**Date:** 03/28/2008    **Page:** 1

| Guar Name: | Jackie Pinch | Chart Number: |
| | 40 Crestfield Ct. | |
| | Lake Oswego, OR  97035-1306 | Billing Type: 1 |

| DATE | TEETH | DESCRIPTION | PATIENT | CHARGE | PAYMENT | BALANCE |
|------|-------|-------------|---------|--------|---------|---------|
| 03/27/2008 | | Balance Forward | | 0.00 | | 0.00 |
| 03/28/2008 | | Comp oral eval-new/estab pat | Jackie | 75.00 | | 75.00 |
| 03/28/2008 | | Intraoral-complete series (bw) | Jackie | 110.00 | | 185.00 |
| 03/28/2008 | | Diagnostic casts | Jackie | 95.00 | | 280.00 |
| 03/28/2008 | | Check Payment - Thank You | Jackie | | -266.00 | 14.00 |
| 03/28/2008 | | Courtesy Discount | Jackie | | -14.00 | 0.00 |



| TOTAL FAMILY BALANCE AS OF 03/28/2008: | 0.00 |
|---|---|
| YTD Finance Charges: | 0.00 |
| YTD Late Charges: | 0.00 |
| YTD Family Payments: | 266.00 |
| YTD Insurance Payments: | 0.00 |

*Document 9-B*

*146*

Treatment Proposal

Page 1

Prepared for Jackie Pinch

Printed on 08-07-09 at 10:07a

The fees in this proposal are valid until 12-31-10. After that, fees may increase.

Visit #1

| Code | Description | T# | Surface | Fee | You pay |
|------|-------------|-----|---------|-----|---------|
| 00470 | Diagnostic casts | | | 181.00 | |
| 09950 | Diagnostic Mounting | | | 570.00 | |
| 09950 | Diagnostic Set Up /Adj | | | 630.00 | 1583.10 |
| 02931 | Recement Provisional | | | 378.90 | |
| 02750 | Crown, porc & high nobl | 2 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 3 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 4 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 5 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 6 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 7 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 8 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 9 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 10 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 11 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 12 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 13 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 14 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 15 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 18 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 19 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 20 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 21 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 22 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 23 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 24 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 25 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 26 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 27 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 28 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 29 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 30 | | 1,698.00 | |
| 02750 | Crown, porc & high nobl | 31 | | 1,698.00 | |
| 00103 | Reposition | | | 630.00 | |
| 09940 | Orthotic Bruxism Modifi | | | 1,148.00 | |
| | **TOTAL** | | | 51,081.00 | 51,081.00 |

*Handwritten notes:*
181
378
$559.00

— 10% 5108.10
45,972.90

Current Dental Terminology (CDT) © American Dental Association (ADA). All rights reserved.

Document 9-C

147



Document 9-D

148



**This is the Letter that I received from the Oregon Department of Justice, 2 days after they received my first Notebook of Documents.**

150



JOHN R. KROGER
Attorney General

MARY H. WILLIAMS
Deputy Attorney General

**DEPARTMENT OF JUSTICE**
CIVIL ENFORCEMENT DIVISION

January 27, 2012

JACKIE PINCH
40 CRESTFIELD CT
LAKE OSWEGO OR  97035

Re:    Our File Number: FF0653-12
       Complaint About: OREGON BOARD OF DENTISTRY

       Thank you for sending us your consumer complaint.

       Your complaint concerned the business practice of a governmental entity. The Unlawful
Trade Practices Act (UTPA), which we enforce, does not pertain to the practices of government
entities or officers. We, therefore, do not have authority to handle your complaint. We are sorry
that we cannot help.

       We are forwarding your letter to the Citizens' Representative, Governor's Office, 160
State Capitol, Salem, Oregon 97301 (Phone (503)378-4582) for their consideration.

       Since you may have other legal remedies, besides those offered by the UTPA, you may
still wish to contact a private attorney to discuss your complaint. Information about the lawyer
referral service is enclosed.

       We hope that you will understand the limits of our authority.

       If we can assist you in the future, please do not hesitate to contact us.

                                          Alex Salinas
                                          Enforcement Officer

Enclosures: Small Claims / OSB Referral
B4B

cc:    Citizens' Representative
       Office of the Governor
       160 State Capitol
       Salem, OR  97301

Mailing Adress: 1162 Court St. NE, Salem, OR  97301-4096
Physical Address: 340 Vista Ave SE, Salem, OR 97302-4546
Consumer Hotline (503) 378-4320 (Salem only), 229-5576 (Portland only) or Toll Free 1-877-877-9392
Hotline Hours: 8:30 a.m. to 4:30 p.m., FAX (503) 378-8910, TTY: (800) 735-2900  Website: www.doj.state.or.us

*151*

The Following 3 Pages are Emails sent within or including the Oregon Department of Justice, Dated 1 day after They Received my First Notebook of Documents.

152

## Bader Chrystal M

**From:** McFarlaneMartinez Heather J
**Sent:** Friday, January 27, 2012 9:39 AM
**To:** PERRAULT Ramona * GOV
**Subject:** Add'l info Pinch/Oregon Board of Dentistry
**Attachments:** JUSTICE-#3188835-v1-Add_l_info_from_C.PDF

Please see the attachment for documents submitted by the consumer, **Jackie Pinch,** regarding her complaint about the **Oregon Board of Dentistry** which DOJ recently referred to your office. (Our File Number: FF0653-12)

Thank you.

*Heather McFarlane Martinez, Enforcement Officer*
*Oregon Department of Justice*
*Civil Enforcement Division*
*Financial Fraud/Consumer Protection Section*
*1162 Court St NE*
*Salem, OR 97301*
*Telephone: (503) 934-4400*
*Fax: (503) 378-8910*
*Email: heather.j.mcfarlanemartinez@doj.state.or.us*

1

*/53*

**Bader Chrystal M**

| | |
|---|---|
| **From:** | PERRAULT Ramona * GOV <ramona.perrault@state.or.us> |
| **Sent:** | Friday, January 27, 2012 12:53 PM |
| **To:** | MCFARLANEMARTINEZ Heather J |
| **Subject:** | RE: Add'l info Pinch/Oregon Board of Dentistry |

Hi Heather. I'm not finding the earlier referral. Could you please resend? Thanks.

**From:** McFarlaneMartinez Heather J [mailto:heather.j.mcfarlanemartinez@state.or.us]
**Sent:** Friday, January 27, 2012 9:39 AM
**To:** PERRAULT Ramona * GOV
**Subject:** Add'l info Pinch/Oregon Board of Dentistry

Please see the attachment for documents submitted by the consumer, **Jackie Pinch**, regarding her complaint about the **Oregon Board of Dentistry** which DOJ recently referred to your office. (Our File Number: FF0653-12)

Thank you.

*Heather McFarlane Martinez, Enforcement Officer*
*Oregon Department of Justice*
*Civil Enforcement Division*
*Financial Fraud/Consumer Protection Section*
*1162 Court St NE*
*Salem, OR 97301*
*Telephone: (503) 934-4400*
*Fax: (503) 378-8910*
*Email:* heather.j.mcfarlanemartinez@doj.state.or.us

*****CONFIDENTIALITY NOTICE*****

This e-mail may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this e-mail in error, please advise me immediately by reply e-mail, keep the contents confidential, and immediately delete the message and any attachments from your system.

*************************************

1

*154*

## Bader Chrystal M

| | |
|---|---|
| **From:** | McFarlaneMartinez Heather J |
| **Sent:** | Friday, January 27, 2012 2:24 PM |
| **To:** | PERRAULT Ramona * GOV |
| **Subject:** | FF0653-12 Pinch/Oregon Board of Dentistry |
| **Attachments:** | JUSTICE-#3187184-v1-0653-12_New.PDF; JUSTICE-#3187181-v1-0653-12_B4b.PDF |

Our File Number: FF0653-12 Pinch/Oregon Board of Dentistry

Hi Ramona,

I'm attaching the referral letter we sent to the consumer as well as the original complaint sent to us online. The complaint (additional information) I sent to you this morning was received via regular mail and includes documents.

Thank you.

*Heather McFarlane Martinez, Enforcement Officer*
*Oregon Department of Justice*
*Civil Enforcement Division*
*Financial Fraud/Consumer Protection Section*
*1162 Court St NE*
*Salem, OR 97301*
*Telephone: (503) 934-4412*
*Fax: (503) 378-8910*
*Email:* heather.j.mcfarlanemartinez@doj.state.or.us

1

*155*

**This is the First Complaint Form that I Emailed to the Oregon Department of Justice, Referring to the First Notebook of Documents They Received 6 Days Later.**

**John R. Kroger**
Attorney General



Portland Area (503) 229-5576
Salem Area (503) 378-4320
Toll Free (877) 877-9392
http://www.doj.state.or.us

# Oregon Department of Justice Consumer Complaint Form

### Please Note The Following:

Under Oregon Law, the Attorney General cannot act as your private attorney or give you legal advice. Deadlines may prevent you from starting a lawsuit if you wait too long. Filing this complaint does not change those deadlines or guarantee the results you want. You may wish to contact a private attorney.

Please be advised that this complaint will become part of our permanent records. Consumer complaints may be released to the business or person about whom you are complaining, members of the public or other agencies attempting to establish ongoing patterns or practices which violate Oregon's Unlawful Trade Practices Act. This form is also subject to Oregon's Public Records Law and may be disclosed to persons who request to review its contents.

**Date of complaint submission:**   1/20/12

**Information About The Complainant**
**Name:**   Jackie Pinch
**Address:** 40 Crestfield Court
**City:**   Lake Oswego
**State:**   OR   **Zip:** 97035
**Phone Number:**   (day)(503) 6991717   (eve)(503) 6991717   (cell)(503) 6991717
**Email Address:** ·   Jpinch25@gmail.com

**Information About The Business Or Person About Which You Are Complaining**
**Name:**   Dr. John Sorensen        R= Oregon Board of Dentistry
**Address:** 12750 SW 68th Avenue
**City:**   Portland
**State:**   OR   **Zip:** 97035
**Phone Number:**   (503) 6395599

**Information About The Transaction**
**Date of Transaction(s):**   May/June of 2009
**Type of Sale:**        Other
**The amount of money you think you lost:**   $33,314.00
☒**Attorney:** please see note below
☒**Business:** Oregon Board of Dentistry
☐**Other:**
            ☐ **No Action has been requested.**

## See Attached For Transaction Details



*151*

**Transaction Details**

DETAILS —— Regarding the question of an attorney, I did consult with two attorneys, but I have no written contract with either of them.

DENTAL CASE SUMMARY:

While undergoing the project of Full Mouth Reconstruction with Dr. John Sorensen in May/June of 2009, I found that it was necessary to leave him due to unacceptable patient care. At this time, I still have 28 temporary restorations, despite my efforts to resolve this situation.

In January of 2010, I sent a detailed complaint about Dr. Sorensen to the Oregon Board of Dentistry. One year later, in January of 2011, The Dental Board called to interview me about my case. In April of 2011 the Dental Board announced their decision about my case during their April 15th meeting. Three weeks later I received a letter from them which stated On April 15, 2011, the Board voted to close the matter with No Violation of the Dental Practice Act.

I was stunned by this decision, as I had submitted to them so much evidence of wrongdoing, fraud, and false pretense - actions which were clearly below the Standard of Care.

This coming week I will send you all of the supporting documents of my case.

Thank you, Jackie Pinch

**Thank You!**

*158*

This is the Second Complaint Form that I Emailed
to the Oregon Department of Justice, in my First
Attempt to Correct the Named (Business or Person)
that I was Primarily Complaining About.  In this
Form, I was Still Referring to the First (and Only)
Notebook they had Received so far.

*159*

**John R. Kroger**
Attorney General



Portland Area (503) 229-5576
Salem Area (503) 378-4320
Toll Free (877) 877-9392
http://www.doj.state.or.us

# Oregon Department of Justice Consumer Complaint Form

### Please Note The Following:

Under Oregon Law, the Attorney General cannot act as your private attorney or give you legal advice. Deadlines may prevent you from starting a lawsuit if you wait too long. Filing this complaint does not change those deadlines or guarantee the results you want. You may wish to contact a private attorney.

Please be advised that this complaint will become part of our permanent records. Consumer complaints may be released to the business or person about whom you are complaining, members of the public or other agencies attempting to establish ongoing patterns or practices which violate Oregon's Unlawful Trade Practices Act. This form is also subject to Oregon's Public Records Law and may be disclosed to persons who request to review its contents.

**Date of complaint submission:**   1/31/12

┌ *Information About The Complainant*
**Name:**   Jackie Pinch
**Address:** 40 Crestfield Court
**City:**   Lake Oswego
**State:**   OR   **Zip:** 97035
**Phone Number:**   **(day)** (503) 6991717   **(eve)** (503) 6991717   **(cell)** (503) 6991717
**Email Address:**   Jpinch25@gmail.com

┌ *Information About The Business Or Person About Which You Are Complaining*
**Name:**   Dr. John Sorensen
**Address:** ClearChoice Dental Implant Center - 12750 SW 68th Avenue
**City:**   Portland
**State:**   OR   **Zip:** 97223
**Phone Number:**   (503) 6395599

┌ *Information About The Transaction*
**Date of Transaction(s):**   May/June 2009
**Type of Sale:**   Other
**The amount of money you think you lost:**   $33,313.00
☐**Attorney:** see note below
☐**Business:** Oregon Board of Dentistry
☐**Other:**

☐ *No Action has been requested.*

### See Attached For Transaction Details



160

**Transaction Details**

DETAILS —— Regarding the question of an attorney, I did consult with
two attorneys, but I have no written contract with either one. DENTAL
CASE SUMMARY:  While undergoing Full Mouth Reconstruction with Dr.
Sorensen, I found that it was necessary to leave him due to
unacceptable patient care.  At this time, I still have 28 temporary
restorations, despite my efforts to resolve this situation. He still
has all of the money given to him for this entire project. Please
refer to the documents I sent to the Office of the Oregon Attorney
General which illustrate so much evidence of wrongdoing, fraud, and
false pretense.  This includes materially changing my dental file,
blaming me for any errors in teeth design, and apparently working
without a prescription to his technician in the design of my teeth.
Thank you, Jackie Pinch

**Thank You!**

*161*

This is the Email that I Received from the Oregon
Department of Justice in Reference to the Second
Notebook of Documents I Sent Them. This Email
Named Dr. John Sorensen as the Person Who
My Complaint Was About.

162

**Bader Chrystal M**

| | |
|---|---|
| **From:** | Salinas Alejandrina D |
| **Sent:** | Monday, March 26, 2012 2:59 PM |
| **To:** | 'Jpinch25@gmail.com' |
| **Subject:** | Our File Number: FF0653-12 |

Re:   Our File Number: FF0653-12
       Complaint About: Dr. John Sorensen

Thank you for the additional information you sent us. We will add it to our closed file. We may contact
you in the future if your concerns become the subject of an investigation. We appreciate it when the
public writes to us, as you have, about consumer problems. Without citizen involvement, we cannot be
effective.



Sincerely,

Alex Salinas/ Enforcement Officer
Oregon Department of Justice
340 Vista Avenue SE/Salem, OR 97302
☎ (503) 934-4400
✉ alejandrina.d.salinas@doj.state.or.us

-----CONFIDENTIALITY NOTICE-----
This e-mail may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or
it appears from the context or otherwise that you have received this e-mail in error, please advise me immediately by reply e-mail, keep the contents
confidential, and immediately delete the message and any attachments from your system.
**********************************

1

*163*

# Oregon Dental Practice Act

## Rules Governing Dentists
## Practicing in Oregon

*164*

## Chapter 679 — Dentists

ORS sections in this chapter were amended or repealed by the Legislative Assembly during its 2012 regular session. See the table of ORS sections amended or repealed during the 2012 regular session: 2012 A&R Tables

### 2011 EDITION

DENTISTS

OCCUPATIONS AND PROFESSIONS

GENERAL PROVISIONS

679.010    Definitions

679.020    Practice of dentistry or conducting dental office without license prohibited; exceptions

679.025    License required to practice dentistry; exemptions

679.027    Enjoining violations

679.050    Nonresident dentists giving or receiving instruction; hospital permits

LICENSING

679.060    Application for license; fees; grounds for refusal of license

679.065    Qualifications of applicants; rules

679.070    Examination; certain other examination results in lieu of examination

679.080    Reexamination of applicants; rules

679.090    Issuance of license

679.115    Licensing of dental instructor; requirements

679.120    License fees; waiver of fee; rules; renewal of license

679.140    Discipline of licensee; grounds; procedure; sanctions

679.160    Appeal from board decision

679.165    Automatic suspension of license in case of mental disorder

*165*

679.170    Prohibited practices

679.176    Written work orders required for certain services

679.180    Enforcement; jurisdiction

OREGON BOARD OF DENTISTRY

679.230    Oregon Board of Dentistry; appointment; qualifications; confirmation; compensation and expenses

679.250    Powers and duties of board; rules

679.253    Authority of board to require fingerprints

679.255    Board to adopt standards for sedation during dental procedures; rules

679.260    Oregon Board of Dentistry Account; disbursement of receipts

679.280    Dental committees or consultants for improving standards of practice; liability; confidentiality of proceedings

679.290    Failure to comply with subpoena issued by board

679.300    Privileged data; admissibility of data as evidence in judicial proceedings

679.310    Duty to report violations; exceptions; liability

679.320    Confidentiality of information provided to board; limitation of liability

MISCELLANEOUS

679.500    Administration of local anesthesia for certain purposes; rules

679.510    Liability insurance for retired dentist; requirements; rules

679.520    Treatment of dental waste materials containing mercury

679.525    Amalgam separators required in certain dental facilities

679.530    Information about oral prosthetic devices

PENALTIES

679.991    Penalties

GENERAL PROVISIONS

*166*

**679.010 Definitions.** As used in this chapter and ORS 680.010 to 680.205, unless the context requires otherwise:

(1) "Dental assistant" means a person who, under the supervision of a dentist, renders assistance to a dentist, dental hygienist, dental technician or another dental assistant or renders assistance under the supervision of a dental hygienist providing dental hygiene.

(2) "Dental hygiene" means that portion of dentistry that includes the rendering of educational, preventive and therapeutic dental services and diagnosis and treatment planning for such services. "Dental hygiene" includes, but is not limited to, scaling, root planing, curettage, the application of sealants and fluoride and any related intraoral or extraoral procedure required in the performance of such services.

(3) "Dental hygienist" means a person who, under the supervision of a dentist, practices dental hygiene.

(4) "Dental technician" means that person who, at the authorization of a dentist, makes, provides, repairs or alters oral prosthetic appliances and other artificial materials and devices which are returned to a dentist and inserted into the human oral cavity or which come in contact with its adjacent structures and tissues.

(5) "Dentist" means a person who may perform any intraoral or extraoral procedure required in the practice of dentistry.

(6) "Dentistry" means the healing art which is concerned with the examination, diagnosis, treatment planning, treatment, care and prevention of conditions within the human oral cavity and maxillofacial region and conditions of adjacent or related tissues and structures. The practice of dentistry includes but is not limited to the cutting, altering, repairing, removing, replacing or repositioning of hard or soft tissues and other acts or procedures as determined by the Oregon Board of Dentistry and included in the curricula of dental schools accredited by the Commission on Dental Accreditation of the American Dental Association, post-graduate training programs or continuing education courses.

(7) "Direct supervision" means supervision requiring that a dentist diagnose the condition to be treated, that a dentist authorize the procedure to be performed, and that a dentist remain in the dental treatment room while the procedures are performed.

(8) "Expanded practice dental hygienist" means a dental hygienist who performs dental hygiene services in accordance with ORS 680.205 as authorized by an expanded practice dental hygienist permit issued by the board under ORS 680.200.

(9) "General supervision" means supervision requiring that a dentist authorize the procedures by standing orders, practice agreements or collaboration agreements, but not requiring that a dentist be present when the authorized procedures are performed. The authorized procedures may also be performed at a place other than the usual place of practice of the dentist.

(10) "Indirect supervision" means supervision requiring that a dentist authorize the procedures and that a dentist be on the premises while the procedures are performed. [Amended by 1983 c.169 §1; 1997 c.251 §4; 1999 c.188 §1; 2003 c.83 §1; 2005 c.52 §2; 2007 c.379 §1; 2011 c.716 §3]

**679.020 Practice of dentistry or conducting dental office without license prohibited; exceptions.** (1) A person may not practice dentistry without a license.

(2) Only a person licensed as a dentist by the Oregon Board of Dentistry may own, operate, conduct or maintain a dental practice, office or clinic in this state.

(3) The restrictions of subsection (2) of this section, as they relate to owning and operating a dental office or clinic, do not apply to a dental office or clinic owned or operated by any of the following:

(a) A labor organization as defined in ORS 243.650 and 663.005 (6), or to any nonprofit organization formed by or on behalf of such labor organization for the purpose of providing dental services. Such labor organization must have had an active existence for at least three years, have a constitution and bylaws,

*167*

and be maintained in good faith for purposes other than providing dental services.

(b) The School of Dentistry of the Oregon Health and Science University.

(c) Public universities listed in ORS 352.002.

(d) Local governments.

(e) Institutions or programs accredited by the Commission on Dental Accreditation of the American Dental Association to provide education and training.

(f) Nonprofit corporations organized under Oregon law to provide dental services to rural areas and medically underserved populations of migrant, rural community or homeless individuals under 42 U.S.C. 254b or 254c or health centers qualified under 42 U.S.C. 1396d(l)(2)(B) operating in compliance with other applicable state and federal law.

(g) Nonprofit charitable corporations as described in section 501(c)(3) of the Internal Revenue Code and determined by the Oregon Board of Dentistry as providing dental services by volunteer licensed dentists to populations with limited access to dental care at no charge or a substantially reduced charge.

(4) For the purpose of owning or operating a dental office or clinic, an entity described in subsection (3) of this section must:

(a) Name an actively licensed dentist as its dental director, who shall be subject to the provisions of ORS 679.140 in the capacity as dental director. The dental director, or an actively licensed dentist designated by the director, shall have responsibility for the clinical practice of dentistry, which includes, but is not limited to:

(A) Diagnosis of conditions within the human oral cavity and its adjacent tissues and structures.

(B) Prescribing drugs that are administered to patients in the practice of dentistry.

(C) The treatment plan of any dental patient.

(D) Overall quality of patient care that is rendered or performed in the practice of dentistry.

(E) Supervision of dental hygienists, dental assistants or other personnel involved in direct patient care and the authorization for procedures performed by them in accordance with the standards of supervision established by statute or by the rules of the board.

(F) Other specific services within the scope of clinical dental practice.

(G) Retention of patient dental records as required by statute or by rule of the board.

(H) Ensuring that each patient receiving services from the dental office or clinic has a dentist of record.

(b) Maintain current records of the names of licensed dentists who supervise the clinical activities of dental hygienists, dental assistants or other personnel involved in direct patient care utilized by the entity. The records must be available to the board upon written request.

(5) Subsections (1) and (2) of this section do not apply to an expanded practice dental hygienist who renders services authorized by a permit issued by the board pursuant to ORS 680.200.

(6) Nothing in this chapter precludes a person or entity not licensed by the board from:

(a) Ownership or leasehold of any tangible or intangible assets used in a dental office or clinic. These assets include real property, furnishings, equipment and inventory but do not include dental records of patients related to clinical care.

(b) Employing or contracting for the services of personnel other than licensed dentists.

(c) Management of the business aspects of a dental office or clinic that do not include the clinical practice of dentistry.

(7) If all of the ownership interests of a dentist or dentists in a dental office or clinic are held by an administrator, executor, personal representative, guardian, conservator or receiver of the estate of a former shareholder, member or partner, the administrator, executor, personal representative, guardian, conservator or receiver may retain the ownership interest for a period of 12 months following the creation of the ownership interest. The board shall extend the ownership period for an additional 12 months upon 30 days' notice and may grant additional extensions upon reasonable request. [Amended by 1977 c.192

*168*

§1; 1985 c.323 §3; 1995 c.286 §29; 1997 c.251 §6; 2003 c.322 §1; 2009 c.223 §1; 2011 c.637 §284; 2011 c.716 §4]

**679.025 License required to practice dentistry; exemptions.** (1) A person may not practice dentistry or purport to be a dentist without a valid license to practice dentistry issued by the Oregon Board of Dentistry.

(2) The requirements of this section do not apply to:

(a) Dentists licensed in another state making a clinical presentation sponsored by a bona fide dental society or association or an accredited dental educational institution approved by the board.

(b) Bona fide full-time students of dentistry who, during the period of their enrollment and as a part of the course of study in an Oregon accredited dental education program, engage in clinical studies on the premises of such institution or in a clinical setting located off the premises of the institution if the facility, the instructional staff and the course of study to be pursued at the off-premises location meet minimum requirements prescribed by the rules of the board and the clinical study is performed under the direct supervision of a member of the faculty.

(c) Bona fide full-time students of dentistry who, during the period of their enrollment and as a part of the course of study in a dental education program located outside of Oregon that is accredited by the Commission on Dental Accreditation of the American Dental Association or its successor agency, engage in community-based or clinical studies as an elective or required rotation in a clinical setting located in Oregon if the community-based or clinical studies meet minimum requirements prescribed by the rules of the board and are performed under the direct supervision of a member of the faculty of the Oregon Health and Science University School of Dentistry.

(d) Candidates who are preparing for a licensure examination to practice dentistry and whose application has been accepted by the board or its agent, if such clinical preparation is conducted in a clinic located on premises approved for that purpose by the board and if the procedures are limited to examination only. This exception shall exist for a period not to exceed two weeks immediately prior to a regularly scheduled licensure examination.

(e) Dentists practicing in the discharge of official duties as employees of the United States Government and any of its agencies.

(f) Instructors of dentistry, whether full- or part-time, while exclusively engaged in teaching activities and while employed in accredited dental educational institutions.

(g) Dentists employed by public health agencies who are not engaged in the direct delivery of clinical dental services to patients.

(h) Persons licensed to practice medicine in the State of Oregon in the regular discharge of their duties.

(i) Persons qualified to perform services relating to general anesthesia or sedation under the direct supervision of a licensed dentist.

(j) Persons practicing dentistry upon themselves as the patient.

(k) Dental hygienists, dental assistants or dental technicians performing services under the supervision of a licensed dentist in accordance with the rules adopted by the board.

(L) A person licensed as a denturist under ORS 680.500 to 680.565 engaged in the practice of denture technology.

(m) An expanded practice dental hygienist who renders services authorized by a permit issued by the board pursuant to ORS 680.200. [1953 c.574 §2; 1955 c.560 §1; 1957 c.552 §4; 1963 c.284 §1; 1971 c.48 §1; 1973 c.390 §1; 1975 c.693 §19; 1979 c.1 §16; 1983 c.169 §2; 1993 c.142 §1; 1997 c.251 §5; 2005 c.504 §1; 2011 c.716 §5]

**679.026** [1971 c.48 §2; 1975 c.693 §20; 1977 c.192 §2; 1981 c.185 §1; repealed by 1983 c.169 §34]

*169*

**679.027 Enjoining violations.** The Attorney General, or the prosecuting attorney of any county, or the Oregon Board of Dentistry, in its own name, may maintain an action for an injunction against any person violating any provision of ORS 679.020, 679.025, 679.170 or 679.176. Any person who has been so enjoined may be punished for contempt by the court issuing the injunction. An injunction may be issued without proof of actual damage sustained by any person. An injunction shall not relieve a person from criminal prosecution for violation of any provision of ORS 679.020, 679.025, 679.170 or 679.176 or from any other civil, criminal or disciplinary remedy. [1957 c.552 §2; 1963 c.284 §2; 1979 c.284 §192; 1983 c.169 §3]

**679.030** [Amended by 1953 c.574 §5; repealed by 1977 c.192 §13]

**679.040** [Amended by 1963 c.284 §3; repealed by 2003 c.83 §12]

**679.050 Nonresident dentists giving or receiving instruction; hospital permits.** (1) If a reputable and duly licensed practitioner in dentistry of another state is asked to appear and demonstrate, receive or give instruction in the practice of dentistry before any qualified dental college or dental organization or dental study group recognized by the Oregon Board of Dentistry, the secretary of the board shall issue on written request of an authorized officer of such college or dental organization or dental study group, without fee, a permit for such purpose. A permit shall be issued upon such terms as the board shall prescribe.

(2) If a reputable and duly licensed practitioner in dentistry of another state has been granted staff privileges, either limited, special or general, by any duly licensed hospital in this state, the secretary of the board shall issue on written request and verification of an authorized officer of such hospital, a permit for such nonresident practitioner to practice dentistry in said hospital. [Amended by 1963 c.284 §4; 1965 c.122 §3; 1967 c.282 §1; 1973 c.390 §2]

LICENSING

**679.060 Application for license; fees; grounds for refusal of license.** (1) Any person desiring to practice dentistry in this state shall file an application with the Oregon Board of Dentistry.

(2) At the time of making the application, the applicant shall:

(a) Pay to the board the required application and examination fee.

(b) Furnish the board with evidence satisfactory to the board of details of any convictions recorded in any police records. Such details are subject to the findings required by ORS 670.280.

(c) Present to the board a diploma or evidence satisfactory to the board of having graduated from an accredited dental education program approved by the board.

(3) If an applicant has been in practice in another state or states the applicant shall furnish an affidavit from the secretary of the board of dental examiners or similar body of such state or states that the applicant has been engaged in the legal practice of dentistry in such state or states for a period of time prescribed by the rules of the Oregon Board of Dentistry.

(4) The board may refuse to issue a license or to renew a license of an applicant who has been convicted of a violation of the law if the board makes the findings required by ORS 670.280. A certified copy of the record of conviction is conclusive evidence of conviction.

(5) The board may refuse to issue a license to or renew a license of an applicant who has been disciplined by a state licensing or regulatory agency of this or another state regarding any health care profession when, in the judgment of the board, the act or conduct resulting in the disciplinary action bears a demonstrable relationship to the ability of the licensee or applicant to practice dentistry in accordance

*170*

with the provisions of this chapter. A certified copy of the record of the disciplinary action is conclusive evidence of the disciplinary action.

(6) The board may refuse to issue a license to or renew a license of an applicant who has falsified a license application, or any person for any cause described under ORS 679.140 or 679.170.

(7) Fees paid are not refundable. [Amended by 1963 c.284 §5; 1973 c.390 §3; 1973 c.827 §69; 1973 c.829 §62a; 1977 c.444 §1; 1981 c.232 §1; 1983 c.169 §6; 1985 c.323 §4; 1995 c.199 §1; 2003 c.83 §2]

**679.065 Qualifications of applicants; rules.** (1) An applicant for a dental license shall be entitled to take the examination to practice dentistry in Oregon if the applicant:

(a) Is 18 years of age or older; and

(b) Is a graduate of a dental school accredited by the Commission on Dental Accreditation of the American Dental Association or its successor agency, if any, which must have been approved by the Oregon Board of Dentistry.

(2) Foreign trained graduates of dental programs may apply for the dental licensure examination, providing the applicant meets the board's requirements, by rule, as will reasonably assure that an applicant's training and education are sufficient for licensure. [1983 c.169 §5]

**679.070 Examination; certain other examination results in lieu of examination.** (1) The Oregon Board of Dentistry may administer written, laboratory or clinical examinations to test professional knowledge and skills.

(2) The examination shall be elementary and practical in character but sufficiently thorough to test the fitness of the applicant to practice dentistry. It shall include, written in the English language, questions on any subjects pertaining to dental science. The written examination may be supplemented by oral examination. Demonstrations of the applicant's skill in operative and prosthetic dentistry also may be required.

(3) The board may accept the results of national standardized examinations in satisfaction of the written examination as authorized by this section, and shall accept the results of regional testing agencies or of clinical board examinations administered by other states in satisfaction of the laboratory or clinical examination authorized under this section, provided:

(a) The test or examination was taken within five years of the date of application; and

(b) The applicant received a passing score on the test or examination as established by the board by rule.

(4) The board shall accept the results of regional testing agencies or of clinical board examinations administered by other states in satisfaction of the examinations authorized under this section for applicants who have engaged in the active practice of dentistry in other states, in Oregon or in the Armed Forces of the United States, the United States Public Health Service or the United States Department of Veterans Affairs for at least 3,500 hours in the five years immediately preceding application and who meet all other requirements for licensure. [Amended by 1965 c.122 §4; 1983 c.169 §7; 1999 c.489 §1; 2001 c.193 §1; 2003 c.83 §3; 2005 c.229 §1]

**679.080 Reexamination of applicants; rules.** The Oregon Board of Dentistry may adopt rules requiring additional education and examination of applicants who have failed the licensing examination three times. [Amended by 1973 c.829 §63; 1977 c.444 §2; 1983 c.169 §8; 2003 c.83 §4]

**679.090 Issuance of license.** The Oregon Board of Dentistry shall, upon the applicant's satisfactory completion of the educational requirements and written, laboratory and clinical examinations authorized under this chapter and upon receipt of the requisite fees, issue or renew the appropriate dental license. [Amended by 1963 c.284 §6; 1971 c.34 §1; 1983 c.169 §9]

*171*

**679.100** [Repealed by 1963 c.284 §17]

**679.105** [1997 c.662 §1; repealed by 2003 c.83 §12]

**679.110** [Repealed by 1983 c.169 §34]

**679.115 Licensing of dental instructor; requirements.** (1) Notwithstanding any other provision of this chapter, the Oregon Board of Dentistry shall issue a dental instructor's license to practice dentistry to any person who furnishes the board with evidence satisfactory to the board that the applicant meets the requirements of subsection (2) of this section.

(2) An applicant for a dental instructor's license must be a full-time instructor of dentistry engaged in dental activities, including but not limited to participation in a faculty practice plan, within the scope of the applicant's employment at the Oregon Health and Science University and:

(a) Be a graduate of an accredited dental school; or

(b) If the applicant is not a graduate of an accredited dental school, have a certificate or degree in an accredited, advanced dental education program of at least two years' duration from an accredited dental school and:

(A) Be licensed to practice dentistry in another state or a Canadian province;

(B) Have held an instructor's or faculty license to practice dentistry in another state or a Canadian province immediately prior to becoming an instructor of dentistry at the Oregon Health and Science University;

(C) Have successfully passed any clinical examination recognized by the board for initial licensure; or

(D) Be certified by the appropriate national certifying examination body in a dental specialty recognized by the American Dental Association.

(3) The board may refuse to issue or renew a dental instructor's license to an applicant or licensee:

(a) Who has been convicted of an offense or disciplined by a dental licensing body in a manner that bears, in the judgment of the board, a demonstrable relationship to the ability of the applicant or licensee to practice dentistry in accordance with the provisions of this chapter;

(b) Who has falsified an application for licensure; or

(c) For cause as described under ORS 679.140 or 679.170.

(4) A license issued to an applicant qualifying for a dental instructor's license is restricted to the practice of dentistry in a facility devoted to dental care on the campus of the Oregon Health and Science University.

(5) A license issued to an applicant qualifying for a dental instructor's license who is a specialist by virtue of successful completion of an accredited dental education program is restricted to the specialty in which the dentist was trained.

(6) As used in this section, "accredited" means accredited by the Commission on Dental Accreditation of the American Dental Association or its successor agency, if any. [1999 c.578 §8; 2001 c.188 §1]

**679.120 License fees; waiver of fee; rules; renewal of license.** (1) The Oregon Board of Dentistry may impose application fees for the following:

(a) Examinations, which may differ for general dentistry, foreign school graduate and specialty examinations.

(b) Biennial dentist license, active.

(c) Biennial dentist license, inactive.

(d) Permits and certificates.

*172*

(e) Delinquency.

(2) Subject to prior approval of the Oregon Department of Administrative Services and a report to the Emergency Board prior to adopting the fees and charges, the fees and charges established under this section and ORS 680.075 shall not exceed the costs of administering the regulatory program of the board, as authorized by the Legislative Assembly within the board budget, as the budget may be modified by the Emergency Board.

(3)(a) The board may waive the payment of the license fee in the case of any licensee who furnishes satisfactory evidence that the licensee has discontinued the actual practice of dentistry because of retirement.

(b) Application to reinstate a license retired under paragraph (a) of this subsection or to convert an inactive status license to an active status license shall be made in accordance with the rules of the board and with the submission of the license fee prescribed for such license; provided, however, that if more than one year has expired since the license was retired or inactivated, satisfactory evidence of operative competence must be submitted to the board.

(4) Every dentist shall advise the board within 30 days of any change of address.

(5) Each dentist must renew the dentist's license every two years through submitting a renewal application and paying the license fee.

(6) Dentists licensed in even-numbered years must renew by March 31 of each even-numbered year. Dentists licensed in odd-numbered years must renew by March 31 of each odd-numbered year.

(7) A reasonable charge may be made in the event that the license fee or renewal application is more than 10 days delinquent.

(8) Fees paid are not refundable. [Amended by 1963 c.284 §7; 1967 c.19 §2; 1971 c.34 §2; 1973 c.390 §4; 1977 c.192 §3; 1977 c.444 §3a; 1981 c.232 §2; 1985 c.323 §5; 1989 c.338 §7; 1991 c.703 §25]

**679.130** [Amended by 1973 c.390 §5; 1983 c.169 §10; 1991 c.67 §182; repealed by 1999 c.578 §6]

**679.140 Discipline of licensee; grounds; procedure; sanctions.** (1) The Oregon Board of Dentistry may discipline as provided in this section any person licensed to practice dentistry in this state for any of the following causes:

(a) Conviction of any violation of the law for which the court could impose a punishment if the board makes the finding required by ORS 670.280. The record of conviction or a certified copy thereof, certified by the clerk of the court or by the judge in whose court the conviction is entered, is conclusive evidence of the conviction.

(b) Renting or lending a license or diploma of the dentist to be used as the license or diploma of another person.

(c) Unprofessional conduct.

(d) Any violation of this chapter or ORS 680.010 to 680.205, of rules adopted pursuant to this chapter or ORS 680.010 to 680.205 or of an order issued by the board.

(e) Engaging in or permitting the performance of unacceptable patient care by the dentist or by any person working under the supervision of the dentist due to a deliberate or negligent act or failure to act by the dentist, regardless of whether actual injury to the patient is established.

(f) Incapacity to practice safely.

(2) "Unprofessional conduct" as used in this chapter includes but is not limited to the following:

(a) Obtaining any fee by fraud or misrepresentation.

(b) Willfully betraying confidences involved in the patient-dentist relationship.

(c) Employing, aiding, abetting or permitting any unlicensed personnel to practice dentistry or dental hygiene.

(d) Making use of any advertising statements of a character tending to deceive or mislead the public

*/73*

or that are untruthful.

(e) Impairment as defined in ORS 676.303.

(f) Obtaining or attempting to obtain a controlled substance in any manner proscribed by the rules of the board.

(g) Prescribing or dispensing drugs outside the scope of the practice of dentistry or in a manner that impairs the health and safety of an individual.

(h) Disciplinary action by a state licensing or regulatory agency of this or another state regarding a license to practice dentistry, dental hygiene or any other health care profession when, in the judgment of the board, the act or conduct resulting in the disciplinary action bears a demonstrable relationship to the ability of the licensee or applicant to practice dentistry or dental hygiene in accordance with the provisions of this chapter. A certified copy of the record of the disciplinary action is conclusive evidence of the disciplinary action.

(3) The proceedings under this section may be taken by the board from the matters within its knowledge or may be taken upon the information of another, but if the informant is a member of the board, the other members of the board shall constitute the board for the purpose of finding judgment of the accused.

(4) In determining what constitutes unacceptable patient care, the board may take into account all relevant factors and practices, including but not limited to the practices generally and currently followed and accepted by persons licensed to practice dentistry in this state, the current teachings at accredited dental schools, relevant technical reports published in recognized dental journals and the desirability of reasonable experimentation in the furtherance of the dental arts.

(5) In disciplining a person as authorized by subsection (1) of this section, the board may use any or all of the following methods:

(a) Suspend judgment.

(b) Place a licensee on probation.

(c) Suspend a license to practice dentistry in this state.

(d) Revoke a license to practice dentistry in this state.

(e) Place limitations on a license to practice dentistry in this state.

(f) Refuse to renew a license to practice dentistry in this state.

(g) Accept the resignation of a licensee to practice dentistry in this state.

(h) Assess a civil penalty.

(i) Reprimand a licensee.

(j) Impose any other disciplinary action the board in its discretion finds proper, including assessment of the costs of the disciplinary proceedings as a civil penalty.

(6) If the board places any person upon probation as set forth in subsection (5)(b) of this section, the board may determine and may at any time modify the conditions of the probation and may include among them any reasonable condition for the purpose of protection of the public and for the purpose of the rehabilitation of the probationer or both. Upon expiration of the term of probation, further proceedings shall be abated by the board if the person holding the license furnishes the board with evidence that the person is competent to practice dentistry and has complied with the terms of probation. If the evidence fails to establish competence to the satisfaction of the board or if the evidence shows failure to comply with the terms of the probation, the board may revoke or suspend the license.

(7) If a license to practice dentistry in this state is suspended, the person holding the license may not practice during the term of suspension. Upon the expiration of the term of suspension, the license shall be reinstated by the board if the board finds, based upon evidence furnished by the person, that the person is competent to practice dentistry and has not practiced dentistry in this state during the term of suspension. If the evidence fails to establish to the satisfaction of the board that the person is competent or if any evidence shows the person has practiced dentistry in this state during the term of suspension, the board

*174*

may revoke the license after notice and hearing.

(8) Upon receipt of a complaint under this chapter or ORS 680.010 to 680.205, the board shall conduct an investigation as described under ORS 676.165.

(9) Information that the board obtains as part of an investigation into licensee or applicant conduct or as part of a contested case proceeding, consent order or stipulated agreement involving licensee or applicant conduct is confidential as provided under ORS 676.175. Notwithstanding ORS 676.165 to 676.180, the board may disclose confidential information regarding a licensee or an applicant to persons who may evaluate or treat the licensee or applicant for drug abuse, alcohol abuse or any other health related conditions.

(10) The board may impose against any person who violates the provisions of this chapter or ORS 680.010 to 680.205 or rules of the board a civil penalty of up to $5,000 for each violation. Any civil penalty imposed under this section shall be imposed in the manner provided in ORS 183.745.

(11) Notwithstanding the expiration, suspension, revocation or surrender of the license, or the resignation or retirement of the licensee, the board may:

(a) Proceed with any investigation of, or any action or disciplinary proceedings against, the dentist or dental hygienist; or

(b) Revise or render void an order suspending or revoking the license.

(12)(a) The board may continue with any proceeding or investigation for a period not to exceed four years from the date of the expiration, suspension, revocation or surrender of the license, or the resignation or retirement of the licensee; or

(b) If the board receives a complaint or initiates an investigation within that four-year period, the board's jurisdiction continues until the matter is concluded by a final order of the board following any appeal.

(13) Withdrawing the application for license does not close any investigation, action or proceeding against an applicant. [Amended by 1955 c.560 §2; 1961 c.311 §1; 1963 c.284 §8; 1965 c.122 §5; 1971 c.157 §1; 1973 c.554 §1; 1977 c.192 §3a; 1977 c.745 §51; 1979 c.142 §1; 1979 c.744 §53a; 1981 c.185 §2; 1983 c.169 §11; 1985 c.323 §6; 1991 c.734 §73; 1995 c.199 §2; 1997 c.791 §25; 1999 c.253 §1; 1999 c.578 §1; 2003 c.83 §5; 2009 c.756 §39]

**679.150** [Amended by 1961 c.311 §2; 1963 c.284 §9; 1965 c.122 §6; 1967 c.282 §2; 1983 c.169 §12; repealed by 1999 c.578 §6]

**679.160 Appeal from board decision.** (1) Any licensee who has been disciplined by the Oregon Board of Dentistry may obtain judicial review of the decision in the manner prescribed by ORS chapter 183.

(2) Notwithstanding ORS 676.210, enforcement of the board's disciplinary order pending appeal shall be determined pursuant to ORS 183.482 (3). [Amended by 1961 c.311 §3; 1967 c.282 §3; 1973 c.390 §6; 1977 c.192 §4; 1979 c.744 §54; 1983 c.169 §13; 1995 c.199 §3; 2003 c.83 §6]

**679.165 Automatic suspension of license in case of mental disorder.** The entry of a judgment by any court establishing the mental disorder of any person holding a license under this chapter operates as a suspension of such license. Such person may resume practice only upon a finding by the Oregon Board of Dentistry that the licensee has been declared restored to mental competence by an order of a court of competent jurisdiction. [1957 c.552 §3; 1999 c.59 §202; 2003 c.576 §542]

**679.170 Prohibited practices.** No person shall:

(1) Sell or barter, or offer to sell or barter, any diploma or document conferring or purporting to confer any dental degree, or any certificate or transcript made or purporting to be made, pursuant to the laws

*175*

regulating the license and registration of dentists.

(2) Purchase or procure by barter, any such diploma, certificate or transcript, with intent that it be used as evidence of the holder's qualification to practice dentistry, or in fraud of the laws regulating such practice.

(3) With fraudulent intent, alter in a material regard any such diploma, certificate or transcript.

(4) Use or attempt to use any such diploma, certificate or transcript, which has been purchased, fraudulently issued, counterfeited or materially altered, either as a license or color of license to practice dentistry, or in order to procure registration as a dentist.

(5) Willfully make a false written or recorded oral statement to the Oregon Board of Dentistry in a material regard.

(6) Within 10 days after demand made by the board, fail to respond to the board's written request for information or fail to furnish to the board the name and address of all persons practicing or assisting in the practice of dentistry in the office of such person at any time within 60 days prior to the notice, together with a sworn statement showing under and by what license or authority such person and employee are and have been practicing dentistry.

(7) Employ or use the services of any unlicensed person, to practice dentistry or dental hygiene, except as permitted by ORS 679.025, 679.176 and 680.010 to 680.205. [Amended by 1963 c.284 §10; 1977 c.192 §5; 1981 c.185 §3; 1983 c.169 §14; 1995 c.199 §4; 1999 c.578 §2]

**679.175** [1953 c.574 §3; repealed by 1957 c.552 §9]

**679.176 Written work orders required for certain services.** (1) No dentist may use the services of any person, not licensed to practice dentistry in this state, to construct, alter, repair, reline, reproduce or duplicate any prosthetic denture, bridge, appliance or any other structure to be worn in the human mouth, unless the dentist first furnishes to such person a written work order, in substantially the following form:

_____

(Date)_____, 2___

TO: (Name of dental technician or laboratory with address)
        RE: (Name or number of patient)
        (Description of the work to be done, including diagrams if necessary, together with specifications of the type of materials to be used.)

(Name of ordering dentist)
(Address) _____
(Current license number) ___

_____

(2) A duplicate copy of each such work order issued by the dentist shall be retained by each dentist for not less than two years. The Oregon Board of Dentistry or its agents shall be permitted to inspect, upon demand, the duplicate copies of all such work orders retained by each dentist.

(3) No work order shall permit or require the taking of impressions of any part of the human oral cavity by any person not a dentist licensed by the board. [1963 c.284 §15]

**679.180 Enforcement; jurisdiction.** (1) The district attorney of each county shall attend to the prosecution of all criminal complaints made under this chapter and may represent the Oregon Board of Dentistry in any proceeding brought pursuant to ORS 679.027 upon a complaint, information or indictment filed against any person under this chapter, or upon request of the board. However, nothing in this chapter shall be construed to prevent the prosecution of any person for violation of this chapter upon the information of the district attorney directly or, subject to the requirements of ORS 676.175, to prevent

*176*

assistance being rendered to the district attorney by an employee of the board.

(2) Nothing contained in this chapter shall be construed to require the district attorney to prosecute any person who is licensed by the board and who is subject to disciplinary action directly by the board under any provision of this chapter or ORS 680.010 to 680.205. [Amended by 1963 c.284 §11; 1967 c.282 §4; 1977 c.192 §6; 1983 c.169 §15; 1997 c.791 §26]

OREGON BOARD OF DENTISTRY

**679.230 Oregon Board of Dentistry; appointment; qualifications; confirmation; compensation and expenses.** (1) The Oregon Board of Dentistry consists of 10 members appointed by the Governor and subject to confirmation by the Senate in the manner provided in ORS 171.562 and 171.565. All members of the board must be residents of this state. Of the members of the board:

(a) Six must be Oregon active licensed dentists, of which at least one must be a dentist practicing in a dental specialty recognized by the American Dental Association;

(b) Two must be Oregon active licensed dental hygienists; and

(c) Two must be members of the public who are not:

(A) Otherwise eligible for appointment to the board; or

(B) A spouse, domestic partner, child, parent or sibling of a dentist or dental hygienist.

(2)(a) Board members required to be Oregon active licensed dentists or dental hygienists may be selected by the Governor from a list of three to five nominees for each vacancy, submitted by:

(A) The Oregon Dental Association, if the vacancy is in a dentist position;

(B) The Oregon Dental Hygienists' Association, if the vacancy is in a dental hygienist position; or

(C) Any of the professional organizations representing a dental specialty, if the vacancy is in a dental specialty position.

(b) In selecting the members of the board, the Governor shall strive to balance the representation on the board according to:

(A) Geographic areas of this state; and

(B) Ethnic group.

(3)(a) The term of office of each member is four years, but a member serves at the pleasure of the Governor. The terms must be staggered so that no more than three terms end each year. Terms of office begin on the first Monday of April after the time of appointment. A member is eligible for reappointment. If there is a vacancy in the membership of the board for any reason, the Governor shall make an appointment to become immediately effective for the unexpired term.

(b) A board member shall be removed immediately from the board if, during the member's term, the member:

(A) Is not a resident of this state;

(B) Has been absent from three consecutive board meetings, unless at least one absence is excused;

(C) Is not a licensed dentist or a retired dentist whose license was in good standing at the time of retirement, if the board member was appointed to serve on the board as a dentist or a dental specialist; or

(D) Is not a licensed dental hygienist or a retired dental hygienist whose license was in good standing at the time of retirement, if the board member was appointed to serve on the board as a dental hygienist.

(4) Members of the board are entitled to compensation and expenses as provided in ORS 292.495. The board may provide by rule for compensation to board members for the performance of official duties at a rate that is greater than the rate provided in ORS 292.495. [Amended by 1963 c.284 §12; 1969 c.314 §82; 1971 c.650 §30; 1973 c.792 §36; 1977 c.747 §1; 1983 c.169 §16; 1991 c.955 §1; 2003 c.83 §7; 2009 c.535 §14]

**679.240** [Repealed by 1983 c.169 §34]

*177*

**679.250 Powers and duties of board; rules.** The powers and duties of the Oregon Board of Dentistry are as follows:

(1) To, during the month of April of each year, organize and elect from its membership a president who shall hold office for one year, or until the election and qualification of a successor.

(2) To authorize all necessary disbursements to carry out the provisions of this chapter, including but not limited to, payment for necessary supplies, office equipment, books and expenses for the conduct of examinations, payment for legal and investigative services rendered to the board, and such other expenditures as are provided for in this chapter.

(3) To employ such inspectors, examiners, special agents, investigators, clerical assistants, assistants and accountants as are necessary for the investigation and prosecution of alleged violations and the enforcement of this chapter and for such other purposes as the board may require. Nothing in this chapter shall be construed to prevent assistance being rendered by an employee of the board in any hearing called by it. However, all obligations for salaries and expenses incurred under this chapter shall be paid from the fees accruing to the board under this chapter and not otherwise.

(4)(a) To conduct examinations of applicants for license to practice dentistry and dental hygiene at least twice in each year.

(b) In conducting examinations for licensure, the board may enter into a compact with other states for conducting regional examinations with other board of dental examiners concerned, or by a testing service recognized by such boards.

(5) To meet for the transaction of other business at the call of the president. A majority of board members shall constitute a quorum. A majority vote of those present shall be a decision of the entire board. The board's proceedings shall be open to public inspection in all matters affecting public interest.

(6) To keep an accurate record of all proceedings of the board and of all its meetings, of all receipts and disbursements, of all prosecutions for violation of this chapter, of all examinations for license to practice dentistry, with the names and qualifications for examination of any person examined, together with the addresses of those licensed and the results of such examinations, a record of the names of all persons licensed to practice dentistry in Oregon together with the addresses of all such persons having paid the license fee prescribed in ORS 679.120 and the names of all persons whose license to practice has been revoked or suspended.

(7) To make and enforce rules necessary for the procedure of the board, for the conduct of examinations, for regulating the practice of dentistry, and for regulating the services of dental hygienists and dental auxiliary personnel not inconsistent with the provisions of this chapter. As part of such rules, the board may require the procurement of a permit or other certificate. Any permit issued may be subject to periodic renewal. In adopting rules, the board shall take into account all relevant factors germane to an orderly and fair administration of this chapter and of ORS 680.010 to 680.205, the practices and materials generally and currently used and accepted by persons licensed to practice dentistry in this state, dental techniques commonly in use, relevant technical reports published in recognized dental journals, the curriculum at accredited dental schools, the desirability of reasonable experimentation in the furtherance of the dental arts, and the desirability of providing the highest standard of dental care to the public consistent with the lowest economic cost.

(8) Upon its own motion or upon any complaint, to initiate and conduct investigations of and hearings on all matters relating to the practice of dentistry, the discipline of licensees, or pertaining to the enforcement of any provision of this chapter. In the conduct of investigations or upon the hearing of any matter of which the board may have jurisdiction, the board may take evidence, administer oaths, take the depositions of witnesses, including the person charged, in the manner provided by law in civil cases, and compel their appearance before it in person the same as in civil cases, by subpoena issued over the signature of an employee of the board and in the name of the people of the State of Oregon, require

*178*

answers to interrogatories, and compel the production of books, papers, accounts, documents and testimony pertaining to the matter under investigation or to the hearing. In all investigations and hearings, the board and any person affected thereby may have the benefit of counsel, and all hearings shall be held in compliance with ORS chapter 183. Notwithstanding ORS 676.165, 676.175 and 679.320, if a licensee who is the subject of an investigation or complaint is to appear before members of the board investigating the complaint, the board shall provide the licensee with a current summary of the complaint or the matter being investigated not less than five days prior to the date that the licensee is to appear. At the time the summary of the complaint or the matter being investigated is provided, the board shall provide to the licensee a current summary of documents or alleged facts that the board has acquired as a result of the investigation. The name of the complainant or other information that reasonably may be used to identify the complainant may be withheld from the licensee.

(9) To require evidence as determined by rule of continuing education or to require satisfactory evidence of operative competency before reissuing or renewing licenses for the practice of dentistry or dental hygiene.

(10) To adopt and enforce rules regulating administration of general anesthesia and conscious sedation by a dentist or under the supervision of a dentist in the office of the dentist. As part of such rules, the board may require the procurement of a permit which must be periodically renewed.

(11) To order an applicant or licensee to submit to a physical examination, mental examination or a competency examination when the board has evidence indicating the incapacity of the applicant or licensee to practice safely. [Amended by 1953 c.8 §2; 1957 c.552 §8; 1963 c.284 §13; 1965 c.122 §7; 1973 c.390 §7; 1973 c.829 §64; 1977 c.192 §7; 1983 c.169 §17; 1985 c.323 §7; 1989 c.338 §10; 1999 c.578 §3; 1999 c.751 §6; 2009 c.756 §41]

**679.253 Authority of board to require fingerprints.** For the purpose of requesting a state or nationwide criminal records check under ORS 181.534, the Oregon Board of Dentistry may require the fingerprints of a person who:

(1) Is employed or applying for employment by the board in a position in which the person has or will have access to information that is made confidential under state or federal laws, rules or regulations;

(2) Provides services or seeks to provide services to the board as a contractor, vendor or volunteer in a position in which the person has or will have access to information that is made confidential under state or federal laws, rules or regulations;

(3) Is applying for a license or permit that is issued by the board;

(4) Is applying for renewal of a license or permit that is issued by the board; or

(5) Is under investigation by the board. [2005 c.730 §54]

**Note:** 679.253 was enacted into law by the Legislative Assembly but was not added to or made a part of ORS chapter 679 or any series therein by legislative action. See Preface to Oregon Revised Statutes for further explanation.

**679.255 Board to adopt standards for sedation during dental procedures; rules.** The Oregon Medical Board and the Oregon State Board of Nursing, in consultation with the Oregon Board of Dentistry, shall adopt rules establishing standards governing their respective licensees for general anesthesia and conscious sedation administered in conjunction with the professional services of a dentist or dental hygienist. [1985 c.323 §13]

**679.260 Oregon Board of Dentistry Account; disbursement of receipts.** (1) The Oregon Board of Dentistry Account is established in the State Treasury separate and distinct from the General Fund.

(2) All moneys received by the Oregon Board of Dentistry under this chapter shall be paid to the State

*179*

Treasury and credited to the Oregon Board of Dentistry Account. Any interest or other income derived from moneys paid into the account shall be credited monthly to the account.

(3) Moneys in the Oregon Board of Dentistry Account are appropriated continuously and shall be used only for the administration and enforcement of ORS 680.010 to 680.205 and this chapter.

(4) Ten percent of the annual license fee to be paid by each licensee of the Oregon Board of Dentistry shall be used by the board to ensure the continued professional competence of licensees. Such activities shall include the development of performance standards and professional peer review. [Amended by 1957 c.552 §5; 1967 c.19 §3; 1967 c.282 §5; 1969 c.314 §103; 1973 c.427 §21; 1977 c.192 §8; 1977 c.747 §2; 2003 c.83 §8; 2011 c.597 §279]

**679.270** [Repealed by 1973 c.829 §71]

**679.280 Dental committees or consultants for improving standards of practice; liability; confidentiality of proceedings.** (1) The Oregon Board of Dentistry may appoint a consultant or a committee or committees, each consisting of one or more licensed dentists in this state, to study and report to the board the condition of and dental treatment rendered to any person or persons by any licensed dentist or dentists in this state or by any person purporting to practice dentistry in this state. Any person, hospital, sanatorium, professional grievance committee, nursing or rest home or other organization may, subject to the laws governing privileged or confidential communications, provide information, interviews, reports, statements, memoranda or other data relating to the condition and treatment of any person to the consultant or committee or to the board, to be used in the course of any study for the purpose of improving the standards of dental practice or to enable the board to assess the desirability of disciplinary action relating thereto; and no liability of any kind or character for damages or other relief shall arise or be enforced against the person or organization by reason of having provided the information or material, or arise or be enforced against any consultant or member of the committee by reason of having released or published the findings and conclusions of the consultants or committees to advance dental science and dental education, or by reason of having released or published generally a summary of those studies. When used by the board to assess the desirability of disciplinary action, the testimony given to and the proceedings, reports, statements, opinions, findings and conclusions of the consultants and committees and the board shall be confidential as provided under ORS 676.175, but this shall not preclude the use of the subpoena power with respect to the actual records of dentists, patients, hospitals, sanitaria, nursing or rest homes.

(2) There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any consultant or member of a duly appointed committee for any act or proceeding undertaken or performed within the scope of the functions of that consultant or committee, if the consultant or committee member acts without malice, has made a reasonable effort to obtain the facts of the matter on which the consultant or committee member acts, and acts in a reasonable belief that the action taken is warranted by the facts known to the consultant or committee member after that reasonable effort to obtain the facts. [1965 c.122 §2; 1977 c.192 §9; 1997 c.791 §27]

**679.290 Failure to comply with subpoena issued by board.** (1) If a person fails to comply with any subpoena issued under ORS 679.250 (8), a judge of the circuit court of any county, on application of the executive director of the Oregon Board of Dentistry, shall compel obedience by proceedings for contempt as in the case of disobedience of the requirements of a subpoena issued from the circuit court.

(2) In any proceeding under subsection (1) of this section and where the subpoena is addressed to a licensee of the board it shall not be a defense that:

(a) No witness or mileage fee was paid; or

(b) The material that is subject to the subpoena is protected under a patient and dentist privilege.

*180*

[1983 c.169 §31; 2009 c.756 §42]

**679.300 Privileged data; admissibility of data as evidence in judicial proceedings.** (1) All data shall be privileged and shall not be admissible in evidence in any judicial proceeding, but this section shall not affect the admissibility in evidence of a party's records dealing with a party's care and treatment.

(2) A person serving on or communicating information to a committee described in subsection (4) of this section shall not be examined as to any communication to that committee or the findings thereof.

(3) A person serving on or communicating to a committee described in subsection (4) of this section shall not be subject to an action for civil damages for affirmative actions taken or statements made in good faith.

(4) As used in subsection (1) of this section, "data" means written reports, notes or records of peer review committees or other committees and similar committees of professional societies in connection with training, supervision or discipline of dentists. The term also includes written reports, notes or records of utilization review and professional standards review organization. [1983 c.169 §33]

Note: 679.300 was enacted into law by the Legislative Assembly but was not added to or made a part of ORS chapter 679 or any series therein by legislative action. See Preface to Oregon Revised Statutes for further explanation.

**679.310 Duty to report violations; exceptions; liability.** (1)(a) Unless state or federal laws relating to confidentiality or the protection of health information prohibit disclosure, any dentist or dental hygienist, or any person licensed by the Oregon Board of Dentistry, shall report to the board any suspected violation of this chapter or ORS 680.010 to 680.205 or any rule adopted by the board.

(b) Unless state or federal laws relating to confidentiality or the protection of health information prohibit disclosure, a dentist or dental hygienist, or any person licensed by the board, shall report any prohibited conduct as defined in ORS 676.150 in the manner provided in ORS 676.150.

(c) Unless state or federal laws relating to confidentiality or the protection of health information prohibit disclosure, the Oregon Dental Association or any other organization representing dentists or dental hygienists shall report to the board any suspected violation of this chapter or ORS 680.010 to 680.205 or any rule adopted by the board.

(d) Any person may report to the board any suspected violation of this chapter or ORS 680.010 to 680.205 or any rule adopted by the board, association or other organization representing dentists or dental hygienists.

(2) This section is not intended to require any person working on or with the Oregon Dental Association's Dentist Well Being Committee or Peer Review Committee or the Quality Assurance or Peer Review Committee of the Oregon Dental Hygienists' Association to report to the board any confidential information received within the scope of duties with that committee.

(3) No person who has made a complaint as to the conduct of a licensee of the board or who has given information or testimony relative to a proposed or pending proceeding for misconduct against the licensee of the board, shall be answerable for any such act in any proceeding except for perjury. [1985 c.323 §11; 1999 c.578 §4; 2009 c.536 §7]

**679.320 Confidentiality of information provided to board; limitation of liability.** (1) Any information provided to the Oregon Board of Dentistry as the basis of a complaint or in the investigation thereof shall not be subject to public disclosure during the period of investigation.

(2) Any person who reports or provides information to the board and who does so in good faith shall not be subject to an action for civil damages as a result thereof. [1985 c.323 §12]

*/81*

MISCELLANEOUS

**679.500 Administration of local anesthesia for certain purposes; rules.** (1) A dentist licensed to practice dentistry in this state may administer local anesthesia to a person for the purposes of receiving permanent lip color from a person licensed to perform tattooing under ORS 690.350 to 690.415 or having permanent hair removal in the lip area from a person licensed to perform electrolysis under ORS 690.350 to 690.415.

(2) Prior to administering local anesthesia for the purposes authorized under subsection (1) of this section, the dentist must:

(a) Receive a written order from a person licensed to perform tattooing or electrolysis under ORS 690.350 to 690.415;

(b) Obtain a current health history from and perform an oral examination of the person who will receive the anesthesia; and

(c) Establish and maintain a patient record in accordance with rules adopted by the Oregon Board of Dentistry.

(3) The Oregon Board of Dentistry shall adopt rules authorizing a dentist licensed to practice dentistry in Oregon to administer local anesthesia for the purposes of tattooing human lips or having permanent hair removal in the lip area by a person licensed to perform tattooing or electrolysis under ORS 690.350 to 690.415. [1999 c.578 §10; 2003 c.187 §1; 2011 c.346 §32]

**679.510 Liability insurance for retired dentist; requirements; rules.** (1) For the purposes of this section, "retired dentist" means a person who is retired from active practice except for the practice of dentistry without remuneration as a volunteer.

(2) Subject to availability of funding, the Oregon Department of Administrative Services shall establish a program to purchase and maintain liability insurance for retired dentists. Insurance provided under the program shall be acquired through contracts with liability insurers that are authorized to offer liability malpractice insurance in this state. Insurance shall be provided under the program only if:

(a) Dental services by the retired dentist will be provided through nonprofit corporations offering community services;

(b) Dental services provided by the retired dentist will be offered to low-income patients based on ability to pay; and

(c) The retired dentist will receive no compensation for the dental services provided, except for reimbursement for laboratory fees, testing services and other out-of-pocket expenses.

(3) This section does not impose any liability on the state, or on the officers, employees and agents of the state, for any civil or criminal action against a retired dentist insured under the program established under subsections (1) to (5) of this section.

(4) The department shall monitor the claims experience of retired dentists insured through the program established under subsections (1) to (5) of this section. The department may impose any risk management requirements that the department deems appropriate as a condition of providing liability insurance under the program.

(5) The department shall provide insurance under subsection (2) of this section only to the extent that funds are appropriated to the department for the purposes of funding the program established under subsections (1) to (5) of this section.

(6) The Oregon Department of Administrative Services may by rule establish any conditions considered necessary by the department before providing liability insurance for a retired dentist under the program established by subsections (1) to (5) of this section. [1999 c.1016 §§1,2; 2001 c.104 §261]

Note: 679.510 was enacted into law by the Legislative Assembly but was not added to or made a part

*182*

of ORS chapter 679 or any series therein by legislative action. See Preface to Oregon Revised Statutes for further explanation.

**679.520 Treatment of dental waste materials containing mercury.** (1) A dentist who places in or removes from the human oral cavity dental materials containing mercury shall:

(a) Implement and maintain best management practices of dental wastes as developed by the Oregon Dental Association to prevent amalgam waste and mercury from entering the air, sewage systems, waterways and garbage;

(b) Have an amalgam separator installed on a wastewater drain in a dental facility where the dentist practices if dental materials containing amalgam pass through the wastewater drain. The amalgam separator must be verified by the manufacturer to remove at least 95 percent of the amalgam that passes through the drain on which it is installed;

(c) Maintain an amalgam separator installed as required by this subsection in accordance with the manufacturer's recommendations; and

(d) Place all dental waste materials containing mercury in a vapor-proof container that is clearly labeled as containing mercury and dispose of the materials in accordance with best management practices of dental wastes recommended by the Oregon Dental Association. Disposal may not be by incineration that would result in the release of mercury into the air.

(2) Each dental office shall keep proof of installation of an amalgam separator and maintain an amalgam separator maintenance log that the office shall make available for inspection by the Oregon Board of Dentistry. The board may inspect maintenance logs from a period of up to three years prior to the date of inspection. [2007 c.517 §2]

**679.525 Amalgam separators required in certain dental facilities.** Each dental facility constructed on or after January 1, 2008, shall have amalgam separators that meet the requirements of ORS 679.520 (1)(b). [2007 c.517 §3]

**Note:** 679.525 was enacted into law by the Legislative Assembly but was not added to or made a part of ORS chapter 679 or any series therein by legislative action. See Preface to Oregon Revised Statutes for further explanation.

**679.530 Information about oral prosthetic devices.** Dental technicians shall, upon request by a dentist or patient, provide the dentist or patient with information about the location where oral prosthetic devices that are inserted into the human oral cavity or that come in contact with its adjacent structures and tissues were manufactured. [2009 c.147 §2]

**Note:** Section 3, chapter 147, Oregon Laws 2009, provides:

**Sec. 3.** Section 2 of this 2009 Act [679.530] applies to oral prosthetic devices used on or after the effective date of this 2009 Act [January 1, 2010]. [2009 c.147 §3]

PENALTIES

**679.990** [Repealed by 1957 c.552 §6 (679.991 enacted in lieu of 679.990)]

**679.991 Penalties.** (1) Violation of any provision of ORS 679.020 or 679.025 (1) is a Class C felony.

(2) Violation of ORS 679.170 or 679.176 is a Class B misdemeanor.

(3) In the event of a second or subsequent conviction under subsection (1) of this section, the court must impose a minimum sentence of 10 days of imprisonment.

*183*

(4) In any prosecution for violation of subsection (1) or (2) of this section, it is sufficient to sustain a conviction to show a single act of conduct in violation of any of the provisions of this chapter and it is not necessary to show a general course of such conduct. [1957 c.552 §7 (enacted in lieu of 679.990); 1963 c.284 §16; 1971 c.743 §407; 1973 c.390 §8; 1977 c.192 §10; 1985 c.323 §15; 2011 c.388 §1; 2011 c.597 §280]

---

*184*